BERNARD J. McDONNELL *vs.* THE CITY OF NEW HAVEN
AND NEW HAVEN CITY SCHOOL DISTRICT.

Third Judicial District, New Haven, June Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

Under the charter of the City of New Haven, as enacted in 1897 and
    amended in 1899, the New Haven City School District was not
    dissolved but was continued in sole charge of educational affairs
    within the limits of the district.
The legal effect of the charter of the City of New Haven was to attach
    to certain boards and officers of the city *ex officio*-duties in relation
    to the New Haven City School District, thus imposing on the city
    the responsibility for the character and quality of its administrators
    by the method of their selection, and also giving to the city an
    indirect oversight over and full knowledge of the educational and
    financial affairs of the district, besides an obvious ultimate control
    of the district's general educational and financial policy.
The State has the power to provide in any way that it chooses for the

selection of the administrators of the school affairs in any district, town, or city.

Section 104 of the New Haven charter, which provides that "after this Act takes effect, no meeting of the New Haven City School district shall be held for any purpose whatever," did not terminate the existence of the district when the charter was passed, but is admirably adapted to prevent any possible conflicts between the new administrators of the school affairs of the district and the district itself; for, under the general law, a school district had considerable authority over its school administrators.

Section 116 of the charter, which provides that the Westville School District and the South School district may become annexed to the New Haven City School district by following certain procedure specified in the charter, when read in connection with over thirty specific references in the charter to the district as an existing district, make the conclusion irresistible that it was the legislative intent as expressed in the charter to continue the New Haven City School District as a functioning body.

Section 110 of the charter, which provides that the board of finance of the city shall annually appropriate for the purpose of the New Haven City School District such amounts as it may deem necessary, does not confer upon the board of finance the power to review and diminish the estimates of the board of education submitted to it under § 109 of the charter. "Appropriating" for the purpose of the district, refers to levying taxes for the purposes of the school district, and appropriating in that sense.

The reference in § 108 of the charter to "rules and regulations" by the board of finance respecting orders upon the city treasurer by the board of education, relates to the form of the order for bookkeeping purposes and clearness of accounts in the city treasurer's office.

The bonding Acts by which the City of New Haven is authorized to borrow money for the construction of schoolhouses within the New Haven City School District, and to repay the loans by taxation of the whole city, which include the outlying Westville City School district and the South School district, are possibly explained by the fact that the high schools within the New Haven City School District are used by students residing in the two outlying districts.

The officials of the school district are controlled only by the provisions of the charter which relate directly or by necessary implication to the school officers of the district, and, while acting as administrators of the school district, they are not the agents or officials of the city and cannot impose any obligations upon the city in relation to the school affairs of the district unless so authorized by the express terms of the charter or other statutory provisions.

There are no terms in the charter or other statutory provisions which impose an obligation on the city to pay the salaries of school principals incurred by the defendant district.

The plaintiff sued to recover his salary as principal of a school in the New Haven City School District, and, upon default of appearance by the district, filed an affidavit of such indebtedness. *Held* that the trial court erred in refusing to enter judgment for the plaintiff against the district.

Neither the law of the State nor the provisions of the New Haven charter affecting the New Haven City School District, require an appropriation to pay the salary of a school principal; and other provisions of the charter, which neither directly nor by necessary implication relate to the school affairs of the district, are not controling.

Argued June 13th—decided July 27th, 1923.

ACTION to recover an instalment of salary alleged to be due to the plaintiff as principal of a grammar school in the defendant city and school district, brought to the Court of Common Pleas in New Haven County and tried to the court, *Simpson, J.*, upon the defendant city's demurrer to the complaint, after the defendant school district had made default of appearance; the court sustained the demurrer and, upon the plaintiff's refusal to plead over, rendered judgment for the defendant city, but denied the plaintiff's motion to render judgment against the defendant school district; and from this judgment the plaintiff appealed. *Error; judgment to be entered for plaintiff against the defendant school district.*

*Charles E. Clark,* for the appellant (plaintiff).

*William L. Bennett* and *Thomas R. Robinson,* for the appellee (defendant city).

CURTIS, J. The plaintiff claims that the court erred in sustaining the demurrer of the city, and in denying his motion for judgment against the school district.

The demurrer of the city is based fundamentally on the claim that under its charter the city is not liable for contracts alleged to have been made by or in be-

half of the defendant district and the city by the board
of education. The motion for a judgment against the
defendant district was denied upon two grounds: 1.
That the defendant district has ceased to function. 2.
That it is not alleged that an appropriation has been
made to pay the plaintiff's demand. It thus appears
that we are confronted with the necessity of considering
the situation created by the charter in reference to
the obligations of the defendant district and the city, if
any, in regard to school affairs in the territory of the
district.

The present charter of the City of New Haven was
enacted in 1897 and revised and amended in 1899. It
contains provisions relating to the defendant school
district, the effects of which are in controversy. The
city claims that the charter abolished the defendant
school district as a corporation functioning in the ad-
ministration of school affairs in the territory of the
district, and provided for the control and management
of school affairs in that territory by the city. The
plaintiff claims that under the charter the defendant
district continues to exist and function in the manage-
ment of school affairs in the district and is liable for
lawful expenditures in such affairs, and that the charter
makes the city also liable for such expenditures.

The terms of the charter disclose that in 1897 there
were within the limits of the city, and embracing its en-
tire territory, three school districts, each functioning in-
dependently and having the control and management
of school affairs in its own district. They were the New
Haven City, the Westville City, and the South School
districts. The two latter districts were specifically
excepted from the provisions of the charter, but au-
thorized to become annexed to the New Haven City
School District, if they desired, by following certain
procedure specified in the charter (§ 116). The terms

of the charter also disclose that in enacting the charter the State was dealing with the school affairs of the major portion of the city, and that in 1897 a consolidation of districts and city management of the schools and school affairs of the whole city were not immediately contemplated. The problem for the State was how to meet this situation for the best interests of educational matters in the city. The two minor and outlying school districts were left in independent control of their school affairs. The State had the power to provide, in any way that it chose, for the selection of the administrators of the school affairs in any district, town or city. *State ex rel. Huntington* v. *Huntington School Committee,* 82 Conn. 563, 566, 74 Atl. 882; *State ex rel. Walsh* v. *Hine,* 59 Conn. 50, 58, 21 Atl. 1024.

The charter must be construed in the light of the situation as to school affairs in the city and defendant district, in so far as it is disclosed by the complaint and the terms of the charter. From the situation as so disclosed, and from the terms of various provisions of the charter to some of which we shall later specifically refer, we are of the opinion that the State in enacting this charter did not abolish the defendant district, but left it in operation in the management of the schools and school affairs of the district, and provided and selected for such management administrative officials, by what was, in legal effect, attaching to certain boards and officers of the city *ex officio*-duties in relation to the district. The State thus provided a continuous body of officials for the district, and imposed on the city the responsibility for the character and quality of its administrators by the method of their selection, and also gave the city an indirect oversight over and full knowledge of the educational and financial affairs of the district, besides an obvious ultimate control of the district's general educational and financial policy. The

State had full power to so provide administrators for the school affairs of the district. In *State ex rel. Walsh* v. *Hine*, 59 Conn. 50, 21 Atl. 1024, we upheld legislation making the "secretary of the state board of education" *ex officio* a member of the school committee in certain towns and districts. Therefore the selection of *ex officio* administrators of a school district from officials not necessarily living in or connected with the district, is not anomalous, and does not raise a controlling inference that the State did not intend, by the provisions in this charter, to attach *ex officio*-duties to certain boards and officials of the city. The fact that § 104 of the charter provides that "after this Act takes effect no meeting of the New Haven City School district shall be held for any purpose whatever," does not conclusively establish that such district ceased to exist when the charter was enacted. The charter had provided for all the requisite officials of the district, and for the levying of taxes and the custody of the funds of the district. Under the general law, a school district had considerable authority over its school administrators. *State ex rel. Huntington* v. *Huntington School Committee*, 82 Conn. 563, 566, 74 Atl. 882; *Gilman* v. *Bassett*, 33 Conn. 298. To prevent any possible conflicts arising between the new administrators of the school affairs of the district and the district itself, § 104 was admirably adapted. Section 116 provides that the two outlying districts of the city, the Westville and the South, may become annexed to the New Haven City School District, if they desire, by following certain procedure specified in the charter. This provision clearly implies the continued existence of the defendant school district as a body corporate performing its statutory duties in the management and control of the schools and school affairs of the district. If the term, New Haven City School District, when used in

the charter, is used merely as a convenient designation of the territory included in the district in 1897, as the city urges, why should the charter, while abolishing the district, provide elaborate steps for the two minor districts to become annexed to a defunct body?

There are numerous provisions in the charter which, read in connection with § 116, make the conclusion irresistible that it was the legislative intent as expressed in the charter to continue the defendant district as a functioning body. Section 104 provides that a department of education of the city shall have the care and management of all the affairs of the "New Haven City School District." Section 108 provides, in effect, that the treasurer of the city shall be the treasurer of the defendant district. Section 31 provides that the tax collector of the city shall also be the tax collector for the defendant school district. Section 115 speaks of the district acquiring property in the future. Section 110 provides that the board of finance shall levy taxes on the property in the district for school purposes. The provision in this section that this board "shall annually appropriate for the purpose of said district," in addition to the foregoing, "such amount as it may deem necessary," does not mean, in our opinion, that this board either as a board of the city or *ex officio* as a board of finance of the district, shall have power to review and diminish the estimates of the board of education submitted to it under § 109. Appropriating for the purposes of the district refers to levying taxes for the purposes of the district, and thus appropriating. The reference in § 108 to "rules and regulations" by the board of finance as to orders upon the city treasurer by the board of education, relates to the form of the order for bookkeeping purposes, and clearness of accounts in the city treasurer's office. *Reif* v. *Schwab*, 197 N. Y. Supp. 127, 131; *Fuhrmann* v. *Graves*, 235 N.

Y. 77, 83, 138 N. E. 743. There are over thirty specific references in the charter to the defendant district in terms which imply a presently existing district.

Certain bonding Acts by which the City of New Haven was authorized to borrow money, to build schoolhouses within the defendant district, and repay the money by taxation of the whole city, are cited as anomalous proceedings, if the district continues to exist. The point of this suggestion is that the portion of the city within the Westville City district and the South district is thereby made liable for expenditures in another school district. If we assume that under the charter the City of New Haven alone has charge of the school affairs of the defendant district, is it any the less anomalous that the same result then follows as to the two other districts under these bonding Acts? It is an obvious explanation of this seemingly anomalous situation that certain privileges, as for instance, the use of high schools located in the defendant district by pupils from the outlying districts, may fully account for and justify the seeming anomaly, and justify any provision for the city to contribute to the expense of school sites or buildings.

From our position as to the scope of the charter, as above set forth, the officials of the school district, provided for it by the State in the manner indicated, are, in relation to the school affairs of the district, the agents of the district, and are controlled only by the provisions of the charter which either directly or by necessary implication relate to the school affairs of the defendant district. Provisions of the charter, not so related to the district, are not controlling upon them while acting as administrators of the district under the authorization of the State. While so acting, they are not the agents or officials of the city, and cannot impose any obligations upon the city in relation to

school affairs of this district, unless so authorized by the express terms of the charter or other statutory provisions.

There are no terms in the charter, or other statutory provisions, which impose an obligation on the city to pay the salaries of school principals incurred by the defendant district. Under the relations existing between the defendant district and its administrators selected by the State, it follows that questions arising thereto are to be resolved, (1) by statutory provisions, whether found in the charter or elsewhere, relating specifically to the defendant district or its administrators; (2) by necessary implications therefrom; (3) by general statutory provisions, not inconsistent with (1) and (2) above, relating to school districts, their committees or administrators, however entitled; (4) by such common law, if any, as has developed in relation to school districts and their administrators.

We turn to the consideration of the reasons of appeal in the light of these conclusions. The city demurred to the complaint upon grounds, to the effect, that under the law (which of course, includes the provisions of the charter) the complaint does not set up facts which render the city liable for the salary of a school teacher employed (as alleged) by the board of education. These grounds of demurrer were properly sustained, for, as we hold, the city as such is not, under its charter or otherwise, managing the school affairs of the defendant district, and responsible for its expenditures unless made so by specific legislation, but such affairs are managed by officials of the district selected by the State, who are independent of the city control.

The system of education provided for by the statutes and charter may be summarized in part as follows: The New Haven School District is charged with the management of school affairs in the district and is ex-

clusively liable for lawful expenditures therefor. The board of education appointed by the city, but in law and fact functioning for the district, is given exclusive authority to fulfil the duty of the district to care for and manage the school affairs of the New Haven School District. The board of education is required to make up a detailed estimate of its current expenses for the next year for the requirements of the district for its schools, and to submit the same to the board of finance, which has no authority to decrease the estimate. The board of finance of the city, acting as officers *ex officio* of the district, is charged with the duty of levying and raising, by taxation in the district, funds with which to meet these requirements of this estimate. The treasurer, who receives all school funds, is charged with the duty of paying with such school funds raised by taxation or otherwise the orders of the board of education within its said estimate. In the event that the board of education shall require further funds to meet current school requirements, these must be raised by taxation within the district and by the same method. Judgment was, therefore, properly entered for the city.

The plaintiff then filed an affidavit of indebtedness against the defendant district, which made default of appearance, and moved for judgment against the district. This motion the court denied "because by law the New Haven City School District has ceased to function, and because it does not appear that any appropriation has ever been made with which to pay the plaintiff's demand." As we have shown, the defendant district has not ceased to function. Furthermore, neither under the State law nor under the provisions of the charter affecting the defendant district, is an appropriation necessary to entitle the plaintiff to recover. *McLoud* v. *Selby,* 10 Conn. 390; *New Milford* v. *Litchfield County,* 70 Conn. 435, 39 Atl. 796. This

claim, that an appropriation was requisite to entitle the plaintiff to recover, is based on the ground that the officials now administering the school affairs of the district are controlled by provisions of the charter, which, neither directly, nor by necessary implication, relate to the school affairs of the defendant district. As set forth above, this claim is not well founded. As these grounds for denying the motion are not sustainable and no other available grounds appear, the court erred in not granting the motion.

There is error and the case is remanded with direction to enter judgment for the plaintiff against the defendant district in accord with his affidavit of indebtedness.

In this opinion the other judges concurred.