THE STATE *ex rel.* JOHN WALSH *vs.* CHARLES D. HINE.

Hartford Dist., Jan. T., 1890. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and THAYER, Js.

The act of 1889 (Session Laws, 1889, ch. 125), provides that the secretary of the state board of education shall *ex officio* be a member of the school committee of every town and school district in which is situated a school the teachers of which are appointed by that board. Held not to be unconstitutional as conflicting with Art. 10, sec. 2, of the state constitution, which provides that towns " shall elect such officers of local police as the laws shall prescribe," members of school committees not being officers of that character.

Nor as conflicting with Art. 10, sec. 3, which provides that " the rights and duties of all corporations shall remain as if this constitution had not been adopted, with the exception of such regulations and restrictions as are contained in it," towns not having had the right, when the constitution was adopted, to elect school committees.

Nor as conflicting with any inherent right to local self-government in towns, the towns having no such inherent right.

Nor as opposed to natural right and justice.

[Argued January 15th—decided January 31st, 1890.]

INFORMATION in the nature of a writ of *quo warranto*, by the attorney for the state in the county of Hartford, at the relation of John Walsh ; brought to the Superior Court in Hartford County. The allegations of the information were as follows :—

1. That the town of New Britain, a municipal corporation in said county, on the 13th day of October, 1873, at a meeting held for that purpose, abolished all the school districts and parts of school districts in said town, and assumed the maintenance and control of the public schools therein, and of their property, and became responsible for the debts of the same, and said action has never been rescinded or revoked.

2. At said town meeting the number of the members of the school committee of said town was fixed at twelve, and a school committee was then chosen, and has been yearly chosen since that time, as provided by law, by said town.

3. The relator is, and for more than ten years last past has been, a resident and freeman of said town and an elector thereof.

4. On the 11th day of May, 1889, and from thence continuously hitherto, without any legal warrant, choice or right, Charles D. Hine of said New Britain has used and exercised, and still does use and exercise, the office of a member of said school committee ; and to have, use and enjoy all its liberties, rights, privileges and franchises, the said Hine for all the time aforesaid has usurped and still does usurp, to the damage and prejudice of said town and said relator as a resident, freeman and elector of said town, and also against the peace of the state.

Whereupon the said attorney prays the consideration of this court in the premises, and that due process of law may be awarded against said Charles D. Hine in this behalf, to answer to this court by what warrant he claims to have, use and enjoy the office, liberties, rights, privileges and franchises aforesaid.

The defendant filed the following answer :—

1. That he, on said 11th day of May, 1889, was, ever since has been, and now is, secretary of the state board of education.

2. That on said 11th day of May, 1889, and ever since that time, within the town and school district of New Britain has been situated a school whose teachers are appointed by the state board of education, to wit, the State Normal School.

3. That the defendant has since said time claimed and now does claim to be, and acts as, *ex-officio* a member of the school committee of said town and school district of New Britain, in pursuance of the provisions of chapter 125 of the public acts of 1889.

4. And this defendant denies that he has ever usurped or wrongfully used, exercised or enjoyed said office as charged in said information.

The State demurred to this answer, assigning the following grounds of demurrer :—

1. Because the school committee of a town are officers of

local police, and the election of such officers is, by the constitution of the state, vested in the town; and the alleged appointment of the respondent by virtue of the act of the General Assembly is therefore void.

2. Because the right of choosing their own officers by towns and other public corporations existed long prior to the adoption of the constitution of the state, and was reserved to them by that instrument; and the alleged appointment of the defendant is therefore void.

3. Because towns have the inherent right to local self-government, the most vital principle of which is the sole right to choose their own officers, which in a republic cannot be denied them; and the attempt of the General Assembly to deprive them of such right is void.

4. Because the General Assembly cannot delegate to another person or body who are not residents of the town the power of selecting a member of a school committee of such town.

5. Because the act by which the respondent alleges his appointment does not require that he shall be a resident or inhabitant of a town for which he is appointed.

6. Because the alleged appointment of the respondent by virtue of the act of the General Assembly, without the choice being made or approved by the inhabitants and electors of the town, is contrary to natural right and justice and in violation of the social compact.

7. Because the act by virtue of which the respondent claims to be appointed and to act does not require even that he shall be a resident or inhabitant of the state.

8. Because the reasons hereinbefore set forth apply with equal force if it shall be deemed that there is such a body as a school district under the allegations in the information, and the respondent is therefore acting illegally.

The case, upon these pleadings, was reserved for the advice of this court.

*J. Walsh*, in support of the demurrer.

1. The school committee of a town are officers of local

police.   Art. 10, sec. 2, of the constitution of the state provides that "every town shall annually elect selectmen and such officers of local police as the law may prescribe."   In 1872 an act was passed providing that towns might abolish all school districts within their limits and assume and maintain control of the public schools of the town.   Gen. Statutes, §§ 2193 to 2112.   By virtue of that act the town of New Britain in 1873, by legal proceedings abolished all school districts within its limits, and assumed and has ever since retained the control and management of its schools; and a school committee of twelve members was then chosen and has been elected annually ever since.   Upon this committee the statute imposes large duties and gives it large powers in the management not only of the schools but of all the school property and interests of the town.   Gen. Statutes, § 2197.   The maintenance of schools and the election of committees to manage school interests were imposed upon the towns as early as 1650, and so remained for more than a hundred and fifty years.   1 Colonial Records, 554; 2 id., 312; 3 id., 9; 4 id., 31, 332; 5 id., 353; 6 id., 10; Rev. Statutes of 1796, p. 371.

2. As to the second cause of demurrer.   Art. 10, sec. 3 of the constitution provides that "the rights and duties of all corporations shall remain as if this constitution had not been adopted, with the exception of such regulations and restrictions as are contained in this constitution."   In 1639 (1 Col. Records, 36,) the general court enacted that "the towns of Hartford, Windsor and Wethersfield, or any other of the towns within this jurisdiction, shall each of them have power to dispose of their own lands undisposed of, and all other commodities arising out of their own limits bounded out by the court (the liberties of the great river excepted,) as also to choose their own officers."   The power thus conferred upon towns to choose their own officers has been exercised by them continuously since that time, without any attempt at curtailment or restriction, until the passage of this act.   Upon the formation of societies and parishes which embraced the inhabitants within certain boundaries,

the right to take part in any of their meetings, and the election and choice of their officers, was confined to the settled and admitted inhabitants residing within their limits. So well known is that fact that a citation of authorities would be superfluous. These rights having been in existence at and before the adoption of the constitution, were plainly reserved to the people of the towns and other corporations by it, and the act in question which attempts to take away these rights is void.

3. The right of towns to local self-government. Townships existed immemorially in England, from which the first settlers came, and they brought with them the forms of government existing there ; and while an early act of the general court recognized their existence and re-enacted their powers, it did not create them. According to Coke upon Littleton, 116 a, the first edition of which appeared in 1628, there were then in England and Wales 8803 towns. By articles 15 and 16 of Magna Charta it was stipulated that the liberties and free customs of London, and of all other cities, boroughs, towns and courts, should be preserved. These liberties and customs are all connected with and dependent upon the right to choose their own officers and regulate their own local concerns. See also 25 Henry III ; 25 EDW. I, ch. 1, 2. Judge COOLEY (Const. Lim., 189,) says :—" The American system is one of complete *decentralization*, the primary and vital idea of which is, that local affairs shall be managed by local authorities and general affairs only by the central authority. It is this, also, that impelled the several states, as if by common arrangement, to subdivide their territory into counties, towns, and road and school districts, and to confer upon such the power of local legislation ; and also to incorporate cities, boroughs, and villages wherever a dense population renders different rules important from those which are needful for the rural districts. This system is one which almost seems a part of the very nature of the race to which we belong. A similar subdivision of the realm has existed in England from the earliest ages, and in America the first settlers, as if instinct-

ively, adopted it in their frame of government, and no other has ever supplanted it or even found advocates. In most of the colonies the central power created and provided for the organization of the towns, in one at least the towns preceded it and created the central authority, but in all the final result was substantially the same; that towns, villages, boroughs and cities exercise the powers of local government; and the colony or state, the powers of a more general nature." Again in the same work Judge COOLEY says (p. 175:) "The right of local self-government cannot be taken away, because our constitutions assume its continuance as the undoubted right of its people, and as an inseparable incident to republican government." This question was fully discussed and decided by the Supreme Court of Indiana in the case of *State* v. *Denny*, 118 Ind., 382. The court there say :—" The conclusion we unhesitatingly reach is that the right of local self-government in towns and cities of this state is vested in the people of the respective municipalities, and that the General Assembly has no right to appoint the officers to manage and administer municipal affairs; that the right of the General Assembly ends with the enactment of laws prescribing the manner of selection and the duties of the officers." In *People* v. *Hurlbut*, 24 Mich., 44, COOLEY, J., in denying the power of the legislature to appoint a board of public works for a town, says (p. 96:)—" The doctrine that within any general grant of legislative power by the constitution there can be found authority to take from the people the management of their local concerns, and the choice directly or indirectly of their local officers, if practically asserted, would be somewhat startling to our people, and would be likely to lead hereafter to a more careful scrutiny of the charters of government framed by them, lest sometime, by an inadvertent use of words, they might be found to have conferred upon some agency of their own the legal authority to take away their liberties altogether." And again on p. 106 :—" The state may mould local institutions according to its views of policy or expediency, but *local government* is matter of absolute

right, and the state cannot take it away. It would be the boldest mockery to speak of a city as possessing municipal liberty where the state not only shaped its government, but at discretion sent in its own agents to administer it; or to call that system one of constitutional freedom under which it should be equally admissible to allow the people full control in their local affairs or no control at all." See also *People* v. *Draper*, 15 N. York, 532; *People* v. *Albertson*, 55 id., 50; *People* v. *Mayor of Chicago*, 51 Ill., 17; *Evansville* v. *The State*, 118 Ind., 426.

4. The General Assembly cannot delegate to another person or body, who are not residents of a town, the power of selecting a member of the school committee of such town. The argument in support of this proposition will be found in the points already cited. If the constitution did not require the town itself to select this school committee, the General Assembly might, as in the case of cities and boroughs, have provided for a body elected by the people which should have the right to select the school committee; but to allow a board, four members of which must be from separate congressional districts, to appoint a person to exercise rights only pertaining to inhabitants of a town, is an assumption of authority which ought not to be sustained.

5. The act by which the respondent alleges his appointment does not require that he shall be a resident or inhabitant of a town for which he is appointed, and it is therefore void. The law in relation to the appointment of the secretary of the state board of education, does not even require that he shall be a resident of the town where the state school is situated, or even that he shall be a resident of this state. Although, by the information in this case, the respondent appears to be a resident of New Britain, yet he was not when the law was passed; but he cannot at the same time also be a resident of Willimantic, where another state normal school is situated; and he cannot at the same time be a resident of the Connecticut Industrial School for Girls, which institution was made a separate school district, the teachers therein to be appointed by the state board of education; and

yet, by virtue of his official position, he can exercise the rights of a member of the school committee in each of those places.

6. The appointment of the respondent as a member of the school committee of the town without the choice being made or approved by the inhabitants and electors of the town, is contrary to natural right and justice and in violation of the social compact. HOSMER, C. J., in *Goshen* v. *Stonington*, 4 Conn., 209, says (p. 225): "With those judges who assert the omnipotence of the legislature in all cases where the constitution has not interposed an explicit restraint, I cannot agree. Should there exist, what I know is not only an incredible supposition but a most remote improbability, a case of the direct infraction of vested rights, too palpable to be questioned, and too unjust to admit of vindication, I could not avoid considering it as a violation of the social compact, and within the control of the judiciary." What the chief justice regarded as an incredible supposition is here an actual fact. CHASE, J., in *Calder* v. *Bull*, 3 Dall., 386, says: "I cannot subscribe to the omnipotence of a state legislature, or that it is absolute and without authority, although its authority should not be expressly restrained by the constitution or fundamental law of the state." In the case of *Loan Association* v. *Topeka*, 20 Wall., 655, the Supreme Court of the United States, in denying the power of the legislature to authorize a town to issue bonds in aid of a private manufacturing enterprise, says: "It must be conceded that there are such rights in every free government beyond the control of the state. A government which recognized no such rights, which held the lives, the liberty and the prosperity of its citizens subject at all times to the absolute disposition and unlimited control of even the most democratic depository of power, is after all but a despotism. It is true it is a despotism of the many,—of the majority, if you choose to call it so,—but it is none the less a despotism. There are limitations on such power which grow out of the essential nature of all free governments; implied reservations of individual rights, without which the social compact could not exist,

and which are respected by all governments entitled to the name."

*E. D. Robbins*, contra.

TORRANCE, J. By an act of the legislature of this state approved March 7th, 1889, and taking effect from its passage, it was provided as follows:—" The secretary of the state board of education shall *ex officio* be a member of the school committee of every town and school district in which is situated a school whose teachers are appointed by the state board of education, and shall have all the powers and duties of the other members of such school committee." Public Acts of 1889, chap. 125.

In the town of New Britain is situated the state normal school, whose teachers are appointed by the state board of education. The respondent is secretary of the board and as such has, ever since the eleventh of May, 1889, exercised, and claimed the right to exercise, under said statute, the office of a member of the school committee of the town of New Britain. The case at bar is an information in the nature of a writ of *quo warranto* to determine the right of the respondent to exercise such office.

In his plea to the information the respondent set up the above facts in justification of his right to act as a member of the committee, to which plea the relator demurred on the ground that the act in question is unconstitutional and void, and the questions so arising upon the record are reserved for the advice of this court.

The relator claims that the act is unconstitutional, first, because it violates certain express provisions of the constitution of this state, and second, because it violates certain fundamental principles impliedly recognized in and by that instrument, which he claims are just as obligatory upon the legislature as if they were expressly contained therein.

The only express provisions of the constitution which it is claimed the act in question violates, are the two following:—" Every town shall annually elect selectmen and such

officers of local police as the laws shall prescribe." Art. 10, sec. 2. " The rights and duties of all corporations shall remain as if this constitution had not been adopted, with the exception of such regulations and restrictions as are contained in this constitution." Art. 10, sec. 3.

Under the first of these provisions it is claimed that the power to elect officers of local police is vested solely in the towns ; under the second, that the right to elect their own town officers, which it is claimed had, prior to the adoption of the constitution, existed in the towns from the foundation of our government, remains to them as before.

If we concede for the sake of the argument that, so far as officers of local police and ordinary town officers are concerned, these claims are well founded, it will not help the relator unless the members of school committees elected by towns, as is the case in New Britain at present, are either officers of local police within the meaning of the constitution or are ordinary town officers, which it is claimed the towns have always had the right to elect.

If the right to elect members of a school committee was not a right which existed in towns at the time of the adoption of the constitution, then it was not one of the rights reserved to them under section 3 of article 10 above quoted. But at the time of the adoption of the constitution the towns in this state possessed no such right. For a long time prior to, and at the time of its adoption, the towns as such had nothing to do with the election of school committees or other officers having charge of educational matters within the town limits. These committees and officers were elected then, as they have to a large extent been elected since, by school societies and school districts, formed at the will of the legislature and frequently without regard to town lines. The claim then that the right to elect school committees was a right which existed in towns prior to the adoption of the constitution and which therefore remained in the towns after its adoption by the express provision above quoted from sec. 3 of article 10, is without foundation in fact.

The other claim, that members of a school committee,

when elected by a town and not by a district or society, are officers of local police, within the meaning of the constitution, is equally without foundation.

From the earliest period in the history of Connecticut the duty of providing for the education of children was regarded as a duty resting upon the state—a governmental duty. Both before and since the adoption of the constitution, that duty was, and has been, performed through the instrumentality of towns, societies and districts, as the legislature from time to time saw fit. In so far as these subdivisions of the territory of the state were used for the performance of this duty, they were the mere agents and instruments of the state, liable to be changed at its pleasure, and used by it from time to time solely because the object in view could in its opinion be more effectually and economically accomplished through such agencies than in any other way. At the time of the adoption of the constitution this governmental duty was, as above stated, performed principally through the instrumentality of the school society and the school district, and not through the town, as indeed it has continued to be ever since. The powers conferred and duties imposed upon these territorial subdivisions in the matter of education, related entirely to the performance of this governmental duty, and such powers were exercised and duties performed by committees and other officers elected by the society or district and not by the towns. It cannot therefore be supposed that when the constitution was adopted its framers understood, when providing for the election of town officers, that the phrase " officers of local police " would include within its meaning the members of school committees, whether of society or district.

And that the phrase " officers of local police " does not include within its meaning the members of school committees and other officers having charge of schools and educational matters solely, whether elected by the town or not, is obvious from another consideration. The word " police," when standing alone, is quite ambiguous. Bouvier thus defines the word. " *Police.* That species of superintendence

by magistrates which has principally for its object the main-
tenance of public tranquillity among the citizens. The offi-
cers who are appointed for this purpose are also called police.
* * * Police has been divided into *administrative* police, which
has for its object to maintain constantly public order in every
part of the general administration; and *judiciary* police, which
is intended principally to prevent crimes by punishing crimi-
nals." Bouvier's Law Dict., *in verbum.*

This meaning of the word " police," when coupled with
the word officer or officers, was doubtless quite well known
to the eminent lawyers who took part in framing our con-
stitution, and in the phrase " officers of local police " the
framers of that instrument must be supposed to have used
the word " police " in its ordinary sense, with which courts
and lawyers and people generally were familiar.

Using the word " police " in this sense, the phrase " offi-
cers of local police," whatever else it includes, does not in-
clude school committees and other officers having charge
solely of educational matters, any more than it does asses-
sors, and this court has decided that assessors are not officers
of local police. *Dibble* v. *Merriman,* 52 Conn., 214. The
mere fact that the members of the school committee of New
Britain are now elected by the town, instead of by districts
within the town, can make no difference. If they were not
officers of local police when elected by the society or school
district, neither are they when elected by the town. The
mode of election does not change the nature of the office,
so long as the powers and duties pertaining to it remain the
same. The fact that assessors are elected by the town does
not make them officers of local police.

It follows therefore that the act in question does not vio-
late any express provision of the constitution.

But the relator further earnestly contends that the act is
void for certain reasons, which are stated in the demurrer as
follows :—

" Because towns have the inherent right to local self-
government, the most vital principle of which is the sole right
to choose their own officers, which in a republic cannot be de-

nied them, and the attempt of the General Assembly to de-
prive them of such right is void.

" Because the alleged appointment of the respondent, by
virtue of the act of the General Assembly, without the
choice being made or approved by the inhabitants and elec-
tors of the town, is contrary to natural right and justice and
in violation of the social compact, and is therefore void."

We have no occasion to decide, or express any opinion
upon, the question raised by the first of the above reasons
of demurrer, as to whether, in the absence of express con-
stitutional provision, the right of towns to elect their own
officers could or could not be denied to them, as it is not in-
volved in the case at bar.  If the reasoning and the conclu-
sions arrived at in the former part of this opinion are right,
then towns in Connecticut have no inherent right to elect
school committees and never had.  In the absence of con-
stitutional restriction we think the legislature may provide
that school committees, whether of a town or a district or
society, may be composed of any persons and chosen in any
manner that it may prescribe.

In answer to the second reason of demurrer above quoted,
in addition to what has been heretofore said, it should be re-
membered that the state, in the performance of its duty to
furnish a common school education to the children within
its borders, pays large sums of money annually to the towns
and other subordinate agencies employed by it in the per-
formance of this duty; that it has established in New Britain
and maintains there, at large expense, a normal school for
the purpose of promoting the cause of education through-
out the entire state ; and that it has established and main-
tains a state board of education with power of " general
supervision and control of the educational interests of the
state."

· If, under such circumstances, the legislature, for reasons
of its own, sees fit to make the secretary of the state board
of education *ex officio* a member of the school committee of
the town where the state itself has such interests, it can
hardly be said with reason that such action is contrary to

natural right and justice and violates the social compact, whatever these vague phrases may mean.

The inhabitants and electors of New Britain have no so-called natural right to elect the entire school committee of that town, nor is such right secured to them by any real or fictitious social compact, and therefore the act in question does not infringe upon or violate any such rights.

The Superior Court is advised that the return is sufficient.

In this opinion the other judges concurred.