[Civil No. 3995.   Filed May 9, 1938.]

[78 Pac. (2d) 1120.]

R. E. GARRISON, H. S. DUNBAR and ERNEST LIRA, Appellants, v. FRANK LUKE, D. C. O'NEIL and THAD MOORE, Members of and Constituting the State Tax Commission of the State of Arizona, Appellees.

Messrs. O'Sullivan & Morgan, Mr. George M. Hill and Mr. T. G. McKesson, for Appellants.

52

Mr. Joe Conway, Attorney General, Mr. W. E. Polley and Mr. J. M. Johnson, his Assistants, for Appellees.

LOCKWOOD, J.—R. E. Garrison, H. S. Dunbar, and Ernest Lira, hereinafter called plaintiffs, brought suit against Frank Luke, D. C. O'Neil, and Thad Moore, as members of the State Tax Commission of Arizona, hereinafter called defendants, to enjoin them from seizing certain property belonging to plaintiffs. The defendants answered, setting up certain reasons why they contended they were justified in making the attempted seizure. Plaintiffs demurred to the answer, and, the demurrers being overruled, stood upon their demurrers, and judgment was rendered in favor of defendants, whereupon this appeal was taken.

The question comes before us on an agreed statement of facts which reads, so far as material, as follows:

"I. That the plaintiffs are the owners and operators of a number of coin operated electric automatic phonograph machines, more particularly described as follows: Each machine is a specially designed electric phonograph machine, so constructed that upon the insertion of a coin or slug into a slot built into the machine and the depression of a button bearing the same number as the particular phonograph record which the player desires to hear, the machine by means of and with the assistance of springs, levers, plungers, electricity and gravity, automatically reproduces the musical selection recorded on the disk so selected. The machines are so constructed that the player has the choice of twelve to twenty different phonograph records on which are recorded musical selections.

"II. That each phonograph, as more particularly described above, owned and operated within the State of Arizona by the plaintiffs, is maintained and placed where such machine is operated for purposes of gain, compensation and profit.

"III. That the issues in this case are limited to two questions: First, whether or not Chapter 78, laws of the regular session, 1935, as amended, imposes a privilege license tax upon each phonograph, as more particularly described above, which is to be paid by the plaintiffs as the owners and operators of such phonograph; second, if such act does impose such tax on such machines, to be paid by the plaintiffs, whether or not chapter 78, laws of the regular session, 1935, as amended, is unconstitutional and of no effect, in the particulars set out in the record."

Chapter 78 of the Session Laws of 1935, referred to in the statement of facts, is entitled:

"An Act relating to taxation, and to provide for the raising of additional public revenue for unemployment and welfare relief by imposing a tax on the sale of certain luxuries and by imposing a privilege tax on the privilege of engaging in certain businesses, and declaring an emergency."

It imposes a tax on many different objects. Article 3 of the act is entitled as follows: "Mechanical Games; Privilege License Tax; Penalties."

And section 1 of said article is in the following language:

"(a) *Imposition of Privilege License Tax; Object.* In addition to all other taxes there is hereby levied and imposed, for the purpose of raising public money to provide unemployment and welfare relief, a privilege license tax upon each mechanical game or device, in the state of Arizona, as classified in subdivision (b) of this section and maintained or placed where such devices or objects may be operated for purposes of compensation, gain or profit or may be available to members of clubs or societies, which such privilege license tax shall be paid by the owner or lessor of such devices or objects and shall be collected by the state tax commission in the manner hereinafter set forth.

"(b) Upon each mechanical game or device, excluding pay telephones and pay toilets, permitting the operation thereof by insertion therein of coins, slugs

or tokens, or which may be operated by means or with the assistance of springs, weights, levers, plungers, magnets, electricity, gravity, or the skill or the force of the player thereof, a privilege license tax of five dollars for each calendar month or fraction thereof for any machine, device, or game upon which a tax is imposed by this act when operated by or in connection with any circus, carnival, show or other traveling attraction, and not operating in a permanent or fixed location, shall be taxed the sum of $10.00 per day for each such machine, device or game. Provided, however, that vending machines which are not games of chance and are used solely for the vending of postage stamps, chewing gums, candies, peanuts, matches, or other merchandise and weighing machines shall not be considered as mechanical games or devices within the meaning of this act.''

It is the position of plaintiffs that the automatic phonograph machine described in the statement of facts is not included in the phrase ''mechanical game or device'' which, by the terms of section 1, *supra,* is subject to taxation, or that, if it is included in such phrase, then the proviso contained in the last sentence of the section, exempting certain classes of vending machines from the provisions of the section, includes automatic phonographs of the class involved in this action.

It is the contention of defendants that the phrase ''mechanical game or device'' does include the phonographs owned and operated by plaintiffs, and that they are not vending machines of the class excepted from the tax.

■ The first question we consider is whether an automatic electric phonograph of the type involved herein is, within the meaning of the act, such a ''mechanical game or device'' as, in the absence of any exceptions, would be subject to taxation. The word ''game'' is defined as any contest for success or superiority in a trial of chance, skill, or endurance. *Des-*

*gain* v. *Wessner,* 161 Ind. 205, 67 N. E. 991. The contest may be against other players, as in most games, or may be against an ideal standard, as in solitaire, or many of the so-called "nickel in the slot" gambling devices, but the contest and doubtful result are always found in every true game. It is obvious that the phonographs operated by plaintiffs are not dependent as to their action upon chance, skill, or endurance, nor is the result of the operation doubtful. The person operating them merely selects from the list of phonograph records found in the machine any one which he desires to hear and then, by the insertion of a coin and the proper manipulation of the machine, the precise record chosen by him will be played. He gets the precise thing which he has chosen and paid for, to wit, the privilege of hearing a certain musical selection. In other words, it is not, in the true meaning of the word, a "game," but rather a vending machine which sells one particular thing, which is commonly called "canned music."

But, say defendants, the machine is within the definition of the act because it is a "mechanical device," even if it is not a "game."

The cardinal rule of statutory construction is that we are to ascertain the meaning of the legislature, and give it effect if such meaning be constitutional. *Hicks* v. *Krigbaum,* 13 Ariz. 237, 108 Pac. 482. In determining this intent, we take into consideration many things—the language used, the object to be accomplished, whether a literal interpretation of the language will lead to an impossibility or an absurdity, the history back of the act, and numerous other matters, no one of which is absolutely controlling as to the intent. It is from a combination of all of these that we deduce such intent. *Coggins* v. *Ely,* 23 Ariz. 155, 202 Pac. 391. Of course if the language is plain and unambiguous, if it can be given but one meaning

and that meaning does not lead to an impossibility nor an absurdity such as cannot be contemplated the legislature intended, we follow that meaning, even though the result may be, in our opinion, harsh, unjust or a mistaken policy. *Buggeln* v. *Cameron,* 11 Ariz. 200, 90 Pac. 324; *Industrial Com.* v. *Price,* 37 Ariz. 245, 292 Pac. 1009. If, however, a literal application of the language leads to a result which produces an absurdity, it is our duty to construe the act, if possible, so that it is a reasonable and workable law, not inconsistent with the general policy of the legislature, even though in so doing we may be compelled to change the punctuation or even the precise language of the act. *Keller* v. *State,* 46 Ariz. 106, 47 Pac. (2d) 442; *Automatic Registering Mach. Co.* v. *Pima County,* 36 Ariz. 367, 285 Pac. 1034; *Deyo* v. *Arizona Grading & Const. Co.,* 18 Ariz. 149, 157 Pac. 371, L. R. A. 1916E 1257.

Counsel for plaintiffs and defendants both admit that, if we are to give the act its literal meaning according to the ordinary rules of grammatical construction as applied to the precise language of the act, it will lead to a result which cannot have been contemplated by the legislature, for it will necessarily imply the imposition of a tax of $5 per month upon every machine of whatsoever nature if it is used for compensation, gain or profit. We agree with them that this is true. It is necessary, therefore, for us to resort to the other canons of construction. Among these is the rule that, when the body of an act is ambiguous in its meaning, we may take into consideration the title. Article 3, *supra,* by its title refers to mechanical "games" only and, as we have pointed out, the phonograph in question is not a game. Subdivision (b) of section 1, in referring to the method of operation, characterizes the operator as a "player" thereof. The word "player" is almost invariably

used in connection with some form of a game, and never with the idea of a purchase of something. For example, one would not say that one who operated a stamp vending machine for the purpose of buying stamps is a "player" of the machine. An exception is made in the act of what are known as "vending" machines which are used to sell small articles of merchandise. There is also an exception of certain classes of mechanical devices which furnish services rather than physical merchandise, such as pay telephones and pay toilets. It is true that the article vended by this machine is not tangible and, therefore, not "merchandise" in the sense that the latter word is used in ordinary parlance, but we think that, when we take into consideration the general language of the act, it is not to be contemplated that the legislature meant to exempt vending machines used for the selling of tangible property and to tax other vending machines on the sole ground that what is purchased is an intangible. The wants of mankind are many, and sometimes intangibles are a source of greater gratification and indeed of real value to the purchaser than are tangible objects. It was urged in oral argument that the vending machines which are exempt are those which sell necessities rather than luxuries, and that the intent of the legislature, since the tax is denominated a luxury tax, was to tax all vending machines which dispense articles or services which are of the latter class. We think the language of the act hardly bears out this construction. While stamps and matches may well be classed as necessities, we think it is stretching the definition to a somewhat unreasonable extent to characterize candies and peanuts as such, while declaring the soothing strains of music are only luxuries. Counsel for plaintiff waxed eloquent in his quotations from many of the greatest of writers, past and present, as to the value and effect of

music. When we remember that "music hath charms to soothe the savage breast" and gaze around us upon the world of today, we are impelled to the conclusion that anything which would accomplish that laudable purpose is a necessity in the highest degree. When we consider the thousands, nay the millions, of dollars that are annually expended by our educational system in teaching the youth of the land the principles of music, both instrumental and vocal, can we say that such teachings are a luxury? Are we to say that the federal government, when it has organized bands and orchestras to give work to the unemployed, is spending money for luxuries? We think the argument of defendants, so far as it claims the vending of music, even though "canned" in its nature, is made subject to the tax imposed by section 1, *supra,* merely because it is a luxury, is fallacious and misleading.

There is apparently but one case on the question of whether a machine which vends an intangible is vending "merchandise" within the meaning of an act imposing a tax somewhat of the nature of that involved in the present action, and that is *State* v. *Fairbanks,* (S. D.), 273 N. W. 188, 111 A. L. R. 759. Although it is not on all fours, we think it does bear upon the question. The statute (Laws of South Dakota 1935, chap. 206, section 1), imposing the tax reads as follows:

" 'Any person, firm, corporation or association who shall use, install or display for public use, any gum machine, mint vending machine, candy vending machine, marble board, striking machine, electric shock machine, match machine, sanitary or hygienic appliance dispensers or any other machine requiring the deposit of money or metal chips therein before operating, other than sanitary napkin machines, pay telephones, gas meters, electric light meters, water meters, pay toilets, public weighing scales, postage stamp machines, and drinking cup machines, within the State

of South Dakota, shall before doing so, secure a license for said machine from the Secretary of Agriculture of the State of South Dakota and pay the license fee provided herein.' "

The machine in question was identical with that involved in the present case, and the court said:

"It is clear to us from the wording of this statute that it was the intent of the legislature to deal with the whole subject of slot vending machines. The machines affected by the statute are all slot vending machines that are operated by dropping a coin or metal chip into the slot. Some of them vend gum, some of them vend candy, some of them vend matches, and still others of them vend music. While some of them vend one thing and some another, they are all vending machines and they are all slot machines.

" . . . The machine is a slot machine; a vending machine. The only difference between it and a candy vending machine is that with one machine you drop a nick*le* in the slot and it passes out a package of candy; with the other you drop a nick*le* in the slot and it plays a phonograph record. They are both nick*le* in the slot machines and both belong to the same class."

■ It is true there was no specific determination of whether or not an intangible, such as music, came within the term of "merchandise," but apparently the court thought that in principle there was no difference between slot vending machines because one sold tangibles and the other intangibles. The only case which directly determines the question of whether music is merchandise is that of *Commonwealth* v. *Nax,* 13 Gratt. (Va.), 789, and the decision there seeme to indicate that the "music" in question was sheet music. It is true that most of the cases which define the word "merchandise" refer to tangible physical objects, but we know of no case where, under a statute like ours, it was specifically held an intangible was not merchandise. We think that it does not neces-

sarily follow from those cases that "merchandise," as the term is used in the present act, must be tangible in its nature.

Taking into consideration the entire language of chapter 78, *supra,* and the fact that admittedly we may not give it a literal interpretation, we are of the opinion that it appears therefrom the real intent of the legislature was to put a tax upon mechanical games which were operated by means of depositing a coin, slug, or token in a slot, and not upon mechanical devices not in the nature of games which furnish to the consumer something of value for a fixed price, whether that something be tangible or intangible in its nature.

We hold, therefore, that electric phonographs of the type described in the statement of facts do not fall within the category set forth in article 3, section 1, *supra,* as subject to taxation. Such being the case, the defendants may not collect the tax set forth in said section, or, in failure of the payment thereof, seize the machines operated by plaintiffs.

The judgment of the superior court of Maricopa county is reversed and the case remanded for further action in accordance with the principles expressed herein.

McALISTER, C. J., and ROSS, J., concur.