302 P.2d 941

Roger ERNST, State Land Commissioner of the State of Arizona, The State Land Department, and the State of Arizona, Appellants,

v.

C. W. COLLINS, Appellee.

No. 5935.

Supreme Court of Arizona.

Nov. 5, 1956.

Ross F. Jones, former Atty. Gen., and Roderic M. Jennings, former Asst. Atty. Gen., on the brief, Robert Morrison, Atty. Gen., and Herbert B. Finn, Sp. Asst. Atty. Gen., appearing for oral argument, for appellants.

Andrew L. Bettwy and Clark & Coker, Phoenix, for appellee.

UDALL, Justice.

The sole question presented on this appeal is whether the lower court was legally correct in adjudging that appellee C. W. Collins was entitled to drill a new irrigation well in a critical area and remove underground waters therefrom for the purpose of irrigating lands held by him under state lease.

The facts are not in dispute and may be summarized as follows: One F. H. Pilcher (who is not a party to this suit) is the owner in fee simple of 120 acres of patented land lying in the SE¼ of section 8, T. 4 N. R. 2 East, G. & S. R. Base and Meridian, and at all times pertinent hereto held permit from appellant State Land Commissioner for the drilling of a

well in the northeast corner of said quarter section. Furthermore, that well was drilled during the year 1951 and its waters were thereafter regularly put to use for irrigation purposes.

Appellee Collins, at all times pertinent hereto, has held an agricultural lease for 200 acres of state land lying in the west half of section 9 (same township as above), which acreage is contiguous to the Pilcher lands, supra. Originally Collins had filed a "notice of intention" to drill a well on this acreage but no drilling was done within the specified period; hence, it expired by its own limitations. A year later permits were issued to him for the drilling of two irrigation wells on said leased lands. However, before any drilling was commenced by Collins, an agreement was entered into between him and Pilcher whereby the latter subleased the Collins lands. This contract provided in part that if the agreement were approved by the land commissioner and the rights were granted to Pilcher to irrigate the state lands therein described, Collins would withdraw his application for the two wells for which he had been given permits. Therefore, the agreement contained a request to amend Pilcher's permit to include the Collins lands in section 9. This request was granted and a permit was issued to Pilcher on March 11, 1952, for the use of waters from his well to irrigate the Pilcher and Collins lands.

When the relationship of landlord and tenant expired, Collins was again on his own to obtain underground waters for his leased lands. He then made application for a permit to drill a well on the NE¼ SE¼NW¼ of section 9, which request is the subject matter of this controversy. Collins' application stated that a *replacement* well was necessary because "the well from which the lands * * * above are irrigated and which well is desired to be *replaced* is owned by other persons." Admittedly, all this land lies within the Salt River Valley critical area as established by the commissioner on September 1, 1951. The application—for the well in question—was rejected by the state land commissioner.

A timely appeal was taken by Collins to the superior court under the provisions of section 11–110, A.C.A.1939, as amended by the Laws of 1952, chapter 117, section 5 [A.R.S. § 37–134]. There a trial de novo was had to the court sitting without a jury. The court found that "in equity and good conscience" the plaintiff (Collins) was entitled to drill an irrigation well "and that underground waters may be withdrawn therefrom for the purpose of irrigating" the lands held under state lease by Collins. The state land commissioner has appealed from this judgment.

The sole assignment of error advanced by the commissioner is as follows:

"The trial court erred by granting the applicant the right to construct a replacement well without any showing the well sought to be replaced would no longer yield sufficient water to irrigate the land normally supplied by it during the past five years."

When the legislature adopted the ground-water code, which made provision for the establishment of critical and restricted areas, it made one exception to the prohibition against the drilling of any irrigation wells in such areas:

"Replacement Wells, Deepening Existing Wells, and Permits Therefor. (a) A permit shall be granted by the state land commissioner *for the replacement or deepening* of an existing irrigation well upon a satisfactory showing that the well intended to be replaced or deepened will no longer yield sufficient water to irrigate the land normally supplied by it within the past five years." Laws 1953, ch. 42, section 3 (now appearing as 45–316, A.R.S.) (Emphasis supplied.)

It is contended by appellant that the plain language of this statute requires that applicant show that the well to be "replaced" is not now capable of yielding sufficient water to irrigate land serviced by it within the past five years. Appellee, on the other hand, asserts that the statute only requires it be shown that water is no longer *available* from the source sought

to be replaced. The problem here presented is a matter of first impression, as this particular section was not construed in Southwest Engineering Co. v. Ernst, 79 Ariz. 403, 291 P.2d 764, wherein the Act of 1848, Laws 1948, 6th Sp.Sess., c. 5, was held constitutional. This statute being peculiar to Arizona, pronouncements from other jurisdictions, if any there be, would be of no help. Thus, we are faced with a simple problem of statutory construction without any claim of ambiguity.

The cardinal rule of statutory interpretation is that the intent of the legislature must be ascertained and followed. State v. Airesearch Mfg. Co., 68 Ariz. 342, 348, 206 P.2d 562; Mendelsohn v. Superior Court, 76 Ariz. 163, 169, 261 P.2d 983. Where that intent appears in plain language, the courts cannot extend the mean so expressed; rather, they must observe the obvious and natural import of the words. Parrack v. Ford, 68 Ariz. 205, 207, 203 P.2d 872; Flowing Wells Co. v. Culin, 11 Ariz. 425, 429, 95 P. 111. Therefore, where as here the language is clear and unambiguous, rules of statutory construction are not employed, except to the extent as they are observed to reach this conclusion. Adams v. Bolin, 74 Ariz. 269, 273, 247 P.2d 617, 33 A.L.R.2d 1102; Automatic Registering Mach. Co. v. Pima County, 36 Ariz. 367, 370, 285 P. 1034.

It is manifest from the record that appellee Collins neither asserted nor made

any effort to prove before the land commissioner or the lower court either that he was the owner of a well which required replacement or deepening because of an inadequate water supply, or that the Pilcher well, sought to be replaced, would not yield sufficient water to irrigate the lands normally supplied by it within the last five years. We hold, therefore, the Collins application does not fall within the legislative classification of a "replacement well". The Pilcher well is not being abandoned; it merely ceases to furnish water for the Collins lands due to termination of landlord-tenant relationship. It was in no sense due to a diminishing supply of water that might be drawn from such well. If such be a fact, and it appears irrefutably so, then the application in the instant case is nothing more than an effort to obtain permission for the drilling of an entirely *new* well which is not authorized under the statute.

We believe the learned trial court improperly rested its decision upon what "equity and good conscience" would require. Such might be a proper basis for an appeal to the legislature to amend the law so as to meet a hard situation such as the instant one. Where the language of a statute is plain or unambiguous, and the meaning does not lead to an impossibility nor an absurdity, the courts must observe the obvious and natural import of the language used therein; nor are they free to extend the meaning, though the result may be harsh, unjust, or mistaken policy. Garrison v. Luke, 52 Ariz. 50, 55, 78 P.2d. 1120; Perkins v. Hughes, 53 Ariz. 523, 529, 91 P.2d 261.

The judgment of the trial court is reversed with directions to affirm the action of the Commissioner in rejecting Collins' application.

Reversed with directions.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.