398 P.2d 892

**POLICE PENSION BOARD OF the CITY OF PHOENIX, Robert Knox, Chairman of the Police Pension Board, and Stanton S. von Grabill, Ex Officio Secretary of the Board, Appellants,**

**v.**

**Lillian WARREN, Appellee.**

No. 7984.

Supreme Court of Arizona.

En Banc.

Feb. 3, 1965.

Rehearing Denied March 9, 1965.

Merle L. Hanson, City Atty., and James D. Lester, Asst. City Atty., Phoenix, for appellants.

Gibbons, Kinney & Tipton, Phoenix, for appellee.

John C. Hughes and Coit I. Hughes, Phoenix, and Kenneth Sperry, Long Beach, Cal., of counsel, for Phoenix Lodge of the Fraternal Order of Police, amici curiae.

Healy, Laubscher & Dickerson, Tucson, for Police Pension Bd. for the City of Tucson, amici curiae.

J. LaMar Shelley, Mesa, for The League of Arizona Cities and Towns and Its Member Municipalities, amici curiae.

STRUCKMEYER, Vice Chief Justice.

This is an application by Lillian M. Warren for writ of mandamus to compel the Police Pension Board of the City of Phoenix to grant her a pension. The lower court ordered that the writ issue and the Police Pension Board of the City of Phoenix and its members appealed.

Appellee had, prior to May 14, 1942, been employed by the City of Phoenix in its Water Department. On that day, at her request, she was transferred from the Water Department to the Police Department and continued as an employee in the Police Department until she left the service of the City on November 15, 1962. Her duties' were clerical and secretarial in that she served as secretary to the Chief of Police and was responsible for the preparation and computation of the department payroll and annual budget. She was not sworn as a police officer nor did she perform police duties in the commonly accepted sense of police work; that is, the protection of life and property, the investigation of crimes, or the apprehension of criminals. She did not contribute five per cent of her salary to the police pension fund as is required by A.R.S. § 9-923, but she did contribute a percentage of her salary for Social Security and to the General Employees' Retirement Fund provided for all city employees by A.R.S. § 38-752 et seq. After her employment terminated, she applied to the Police Pension Board of the City of Phoenix for a pension, which application was denied. Appellee then brought this action

in mandamus in the Superior Court of Maricopa County.

The Arizona statute, A.R.S. § 9–925, subs. A, as re-enacted in 1952 is in substantially the same language as originally enacted in 1937:

> "Any member of the police department whose membership began prior to July 1, 1952 and who serves such department twenty (20) years in the aggregate may, upon application be retired, and shall be paid, during his lifetime, a monthly pension equal to fifty (50) per cent of the average monthly compensation received by him during the period of five (5) years immediately prior to the date of application for retirement. * * *" Ch. 93, Second Regular Session, § 16–1808(b), Laws of 1952.

A.R.S. § 9–911, in its pertinent part, provides:

> "* * * unless the context otherwise requires:
>
> * * * * * *
>
> "6. 'Member' or 'member of the department' means a member of the police department, and includes all ranks and both sexes."

Appellants urge, in effect, that the phrase "member of the police department" as used in § 9–925 means those who were sworn as police officers and whose responsibilities embrace the duties common to peace officers everywhere. Appellee seeks to give to the phrase "member of the police department" a literal significance so as to include those employees who work in the proximity of or assist the police force of the City of Phoenix in the Police Department.

The definition of "member of the department" set forth supra in A.R.S. § 9–911, subs. 6, is plainly tautological. It does, however, provide one guide which we feel has some considerable significance in discerning legislative intent. It includes all ranks of both sexes as members of the department. Webster defines rank as "[g]rade or official standing, as in the army, navy, or nobility; * * *." Webster's Second New International Dictionary. As applicable to a police force, rank is commonly understood to mean patrolman, sergeant, detective, captain, etc. Quite obviously as a clerk or secretary appellee did not hold rank in the Police Department of the City of Phoenix. Nor does appellee contend that she held any rank. There is thus a strong supposition that appellee's interpretation does not coincide with the legislative intended meaning of the phrase "member of the police department."

Appellee states, as a predicate for her argument, that "plaintiff has been employed by the Phoenix Police Department for twenty (20) years, and has been paid from the Police Department Budget." The mis-

conceptions implicit in these statements are fundamental and require some comment. Appellee was not employed by the Phoenix Police Department. She was employed by the City and assigned to work in the Police Department as a classified city employee subject to transfer to another department pursuant to the rules promulgated by the Civil Service Board of Phoenix, see e. g. Rule IV, § 11(a), Rules of the Civil Service Board, City of Phoenix, 1938, and Rule 12, a and b, Personnel Rules, City of Phoenix, 1955. Doubt of the soundness of appellee's position is prompted if we consider that should appellee have been transferred prior to working twenty years in the Police Department she could not have thereafter established any valid claim for retirement under the Police Pension Act.

Moreover, that appellee was paid from the Police Department budget affords no clue as to the intention of the legislature in enacting the police pension statutes. Whom the City of Phoenix includes in the department's budget pursuant to administrative policy can shed no possible light as to whom the legislature intended to include in the phrase "member of the police department." Legislative intent cannot be determined from the varying administrative policies of the different city governments in Arizona or by the inclusion or exclusion of various employees in different cities in the respective police departments. Conceivably, for example, Phoenix might carry police vehicle maintenance employees on the Police Department payroll or in its department budget whereas another city might establish a Maintenance Department for all city vehicles and the employees who serviced police vehicles carried there, or a city might change its administrative policy and at different times carry the same employee in different departments.

Much of the problem arising in this case may be attributed to the use of the word "department" in § 9–925, subs. A, supra. Department is defined by Webster as "[a] division or branch of governmental administration, national or municipal; as, the health, water, or street department of a city; * * *." Webster's Second New International Dictionary. Obviously, a department may be as inclusive or exclusive of personnel as the establishing municipal authority chooses to decree. Insofar as a police department is concerned, it might or might not include those indirectly or incidentally concerned in police affairs; as for example, those employed to wash police vehicles. If appellee's position is correct, potentially many other city employees may seriously claim to have acquired rights under the Police Pension Act. Such a result is patently absurd. Courts will not place upon a statute a construction which will result in an absurd consequence. State Board of Dispensing Opticians v. Schwab, 93 Ariz. 328, 380 P.2d 784; Local 266, International Brotherhood of Electrical

Workers, A. F. of L. v. Salt River Project Agricultural Improvement and Power District, 78 Ariz. 30, 275 P.2d 393. We do not believe the legislature has used the word "department" in the same broad sense that appellee seeks to give to it.

■ Since we conclude that it is unlikely the legislature intended to pension all employees who might be included for administrative purposes by a city as a department, the question then becomes who were intended to be pensioned. The act is entitled "Police Pension Act of 1937". In determining the extent and operation of an act, a court must consider not only the law itself but also its title. In re Twenty-One Slot Machines, 72 Ariz. 408, 236 P.2d 733; Maricopa County v. Douglas, 69 Ariz. 35, 208 P.2d 646; Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120. The fair inference here from the title is that the act concerns itself with the pensioning of those who are commonly understood to be police.

■ Black's Law Dictionary, Third Edition, defines police as "the function of that branch of the administrative machinery of government which is charged with the preservation of public order and tranquility, the promotion of the public health, safety, and morals, and the prevention, detection, and punishment of crimes." The word police is particularly applied to those who are appointed for the purpose of the maintenance of public tranquility among the citizens, State ex rel. Walsh v. Hine, 59 Conn. 50, 21 A. 1024, 10 L.R.A. 83. Indeed, it has been said, "The term 'police' as commonly understood, 'is so plain and unambiguous that there is no occasion for resorting to rules of statutory interpretation, * * *'." Wyndham v. United States, D.C., 197 F.Supp. 856. The meaning of the word "police", as would normally be understood from the title of the act, implies a like meaning in the use by the legislature in the phrase "member of the police department." "Police" is an adjective modifying "department" and restricts "department" to that category or division of individuals charged with the preservation of public order and tranquility and the prevention, detection and punishment of crimes.

■ In determining legislative intent that which is necessarily implied in a statute is as much a part of it as that expressed and the purpose to be accomplished is fundamental when there is otherwise doubt from the express language used. Coggins v. Ely, 23 Ariz. 155, 202 P. 391. The purpose of police pension acts is to attract and hold in police service superior personnel by adequately compensating them for arduous and hazardous duties. Clearly appellee's employment is neither arduous nor hazardous as police employment is known and therefore not within the manifest purpose of the act.

■ There are other well-recognized recourses to statutory interpretation which weigh heavily against appellee. The rule is well settled in this jurisdiction that the contemporaneous construction of a statute by those officials charged with its administration is entitled to great weight in arriving at its proper interpretation, Long v. Dick, 87 Ariz. 25, 347 P.2d 581, 80 A.L.R. 2d 949. In the instant case the record shows that the appellee, in addition to her duties as secretary to the Chief of Police for nearly ten years, prepared the payroll records for the employees of the Police Department. She was advised of the administrative construction of the Police Pension Act by the officials of the City of Phoenix—that she was not considered to be under the act—and she did not at any time compute deductions for herself as contributions to the police pension fund. There was a time shortly after she entered the department, prior to the adoption of the General Retirement Act for city employees, in which no deductions of any kind were taken from her pay.

The following testimony summarizes the interpretation administratively applied in the City of Phoenix and appellee's understanding of it:

"Q Isn't that true that there has been considerable difference between the amount deducted for general employees pension and for the Police Pension Fund?

"A That is right.

"Q Over a period of years?

"A Yes.

"Q You never at any time in compiling or in figuring the budget have figured anything for yourself or any other clerical person under the figure given for the Police Pension Fund, and it has been figured under the figure given for the general employees retirement fund?

"A That is correct.

"Q All police officers have been figured at the higher figure under the Police Pension Fund, is that right?

"A That is right.

"Q Wasn't there a period of time when you first came in the Police Department, Mrs. Warren, and for several years when there was no deduction made at all from your check for any type of pension?

"A That is right.

"Q Wasn't there a Police Pension Act in at that time?

"A There was.

"Q But no deductions were made?

"A No.

"Q You knew this? You were aware that no deductions were made?

"A That is right.

"Q You also were aware that that was because you were not considered to be under the Police Pension?

"A That is right.

"Q When did they start deducting from your check for any type of pension?

"A I don't remember the year of the enactment of the General Employees Retirement. * * *"

Appellee's testimony at the hearing before the Police Pension Board established that she was aware of the construction being given the Police Pension Act by those charged with its administration. Other testimony established that she was also aware that deductions from her pay from 1952 forward were for Social Security for which she acknowledged she is qualified and may be entitled upon reaching the appropriate age. We do not pass judgment on appellee's right to share in Social Security under the Federal Government's regulations, but we cannot but observe that should she share in the Police Pension Fund, she will be in a better relative position than the persons the act was designed to benefit.

Finally, the state legislature, in 1964, after this controversy arose, amended the definition of "member of the police department" to provide:

" 'Member' or 'member of the department' means a member of the police department, *duly commissioned and sworn as a peace officer with all the powers and duties thereof,* and includes all ranks and both sexes. Any person employed in the police department who has actually contributed to the police pension fund prior to the first day of January, 1964, and who is not included within this definition, shall be allowed to continue to contribute to the police pension fund and to receive the benefits conferred by this article but all other persons are excluded." A.R.S § 9–911, subs. 6, as amended Laws 1964, Ch. 59, § 1. (Emphasis supplied.)

While subsequent legislation clarifying a statute is not necessarily controlling on a court, it is strongly indicative of the legislature's original intent. We said in City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410, 414, "an amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act." Since the record does not establish that appellee was ever commissioned or sworn as a peace officer, we feel compelled to observe that this legislative clarification would alone be sufficient upon which to rest the decision.

The legislature further showed its original intent to exclude appellee by permitting those who had actually contributed to the police pension fund prior to January 1, 1964, to receive the benefits conferred by the act. Specifically all others are excluded.

Appellee is in the category of all other persons excluded, having never contributed to the pension fund. That appellee, after she terminated her services with the city, tendered a check to the Pension Board in an effort to bring herself within the act is of no avail. Her rights to a pension, being contractual in nature, vested at least not later than the date of the termination of her employment. See Police Pension Board v. Denney, 84 Ariz. 394, 330 P.2d 1. No act subsequent thereto could breathe life into that which never existed. Having acquired no rights during her term of service, none could thereafter be acquired. Art. 4, Part 2, § 17, Constitution of Arizona, A.R.S.

 Appellee argues that there is authority for her position in a line of cases construing the term "member of the police department" in the State of California. See McKeag v. Board of Pension Com'rs. of City of Los Angeles, 21 Cal.2d 386, 132 P.2d 198; Haas v. City of Los Angeles, 21 Cal.2d 393, 132 P.2d 201; Knoll v. City of Los Angeles, 21 Cal.2d 396, 132 P.2d 203; Hurley v. Sykes, 69 Cal.App. 310, 231 P. 748. We think those cases are distinguishable but feel it is unnecessary to enlarge this decision for that purpose. Even were they not, we think the Arizona statute requires the construction we have here given it and are satisfied to rest this decision upon the bases herein set forth.

The judgment of the court below is reversed and it is ordered that judgment be entered in favor of appellants.

UDALL and McFARLAND, JJ., concur.

LOCKWOOD, Chief Justice (dissenting).

I cannot agree with the reasoning or conclusion reached by the majority of the court.

The factual situation set out in their opinion is essentially correct, but fails to include the fact that appellee did at some time offer to "contribute a sum of money equal to the difference between the retirement deduction to which her salary had been subjected and the regular police pension deduction." Likewise during her employment she did question the fact that her deductions were not the same as those for other members of the police department, but was advised "not to bring it up".

Appellant's claim for a pension from the Police Pension Board of the City of Phoenix is based upon the statute enacted by the Legislature. She claims that she was a "member of the police department" within the meaning of A.R.S. § 9–911 (6), as a matter of law, regardless of the interpretation given that section by the Police Pension Board or the administrative policies of the Phoenix Police Department. In determining this controversy, this court's duty is to interpret the meaning of the legislative enactment, not to pass upon the wisdom thereof.

The interpretation of the majority of the legislative definition of a "member of the police department" includes only those persons subjected to the consequences of extra hazardous risks of bodily harm, disability, or death, and thus excludes the appellee. It is reasonable to suppose that the historical basis for police pension statutes was recognition of the extra hazardous nature of a policeman's duties in apprehension of dangerous criminals. However, we are concerned only with the meaning of the statute enacted by the Arizona Legislature. As this court said in Ernst v. Collins, 81 Ariz. 178, at 182, 302 P.2d 941 at 944:

> "Where the language of a statute is plain or unambiguous, and the meaning does not lead to an impossibility nor an absurdity, the courts must observe the obvious and natural import of the language used therein; nor are they free to extend the meaning, though the result may be harsh, unjust, or mistaken policy. Garrison v. Luke, 52 Ariz. 50, 55, 78 P.2d 1120; Perkins v. Hughes, 53 Ariz. 523, 529, 91 P.2d 261."

We therefore should not extend the meaning of the legislative definition beyond its plain and unambiguous phraseology.

The majority opinion recognizes that the word "department" may be "as broad or as narrow as the establishing municipal authority chooses to decree." With this particular administrative structure we are not here concerned. If the Legislature establishes a policy of pension payments to a "member of the police department", we are concerned only with whether the claimant falls within that definition—not whether we would have included such person as a matter of policy.

In the majority opinion is a discussion of the meaning of the word "police". The meaning of this word is not really the problem. The cases cited, Wyndham v. United States, and State ex rel Walsh v. Hine, cast no light upon the specific problem involved. Wyndham concerned the question of whether a "game warden" was a "police official"; in State ex rel. Walsh v. Hine, the court dealt with the question of whether the wording "officers of local police" could be applied to the term "school commissioners." We are concerned only with the meaning of the phrase "police department" *as defined by the Legislature.*

Certainly one might at first blush consider that the word "rank" would be of significance in distinguishing between persons performing duties as peace officers and those performing merely clerical duties. However, among the numerous definitions found in Webster's Third New International Dictionary (1961), are the following: "*a:* a position or order in relation to others in a group * * *. 8: a grade of official standing: as *a:* a *grade* in the armed forces. *b:* a title of nobility. *c:* a diplomatic or high governmental position * * *." (Emphasis added). In defining the word "rank" the same authority states: "3: to determine

the relative position or merit of: CLASSI-FY, IDENTIFY, RATE * * *." Hence it would be quite possible and logical to find included in a police department the "rank" of "clerk, typist, secretary, radio operator" etc. That these terms are frequently spoken of as "classifications" brings no comfort, since so are the "ranks" of "patrolman, sergeant, detective, captain, etc."

To say that appellee was not *employed* by the Phoenix Police Department, but by the City of Phoenix, but was assigned to the Police Department, is merely a matter of semantic terminology. Certainly, the Police Department is a part of the City of Phoenix, and all who work for the department are working for the City, and are therefore "employed" by the City, regardless of assignment to the Police Department. No doubt someone in the Police Department "assigns" the duties of a secretary such as appellee, even though those duties appear listed in a City "classification plan". The fact that appellee, if transferred from the Police Department prior to working there twenty years, would not have established a valid claim for retirement under the act, applies likewise to any other member of the department who might transfer within that period.

As recently as 1964 the Legislature changed the wording of its definition of a "member of the [police] department" by amending § 9–911. The new definition reads:

" 'Member'. or 'member of the department' means a member of the police department, duly commissioned and sworn as a peace officer with all the powers and duties thereof, and includes all ranks and both sexes."

That the Legislature was aware that the change in definition might have the effect of excluding from pension rights persons who were included prior to the 1964 revision is obvious from the language immediately following the new definition:

"Any person employed in the police department who has actually contributed to the police pension fund prior to the first day of January 1964, and who is not included within this definition, shall be allowed to continue to contribute to the police pension fund and to receive the benefits conferred by this article but all other persons are excluded."

From this language it is apparent that the Legislature contemplated a change in definition, but indicated the change was to apply to future conditions only. Thus it is obvious the Legislature itself regarded as plain and unambiguous the all-inclusive meaning of the words used in the original section.

The Police Pension Board, by regulation, excluded the secretaries from police pension plans immediately after the adoption of the 1937 legislation, and has continued this policy to the present day. This is beyond their power. Where the Legislature has

extended a benefit to a class of persons, an administrative body cannot by regulatory fiat, deprive these persons of the benefits given by the Legislature. After the Legislature determined that Arizona should have the all inclusive type of police pension plan, a local administrative body could not decide that a restricted type would be better, because less burdensome on the taxpayers or for any other reason. Cf. Luhrs v. City of Phoenix, 52 Ariz. 438, 83 P.2d 283 (1938).

Appellee testified at the Pension Board Hearing that she knew deductions were not being made for her on the same basis as the police officers. She further testified that she felt this was an error, but "was advised not to bring it up" when she discovered it. Obviously, if she had "brought it up" in the face of the regulation as adopted by the Police Department, and the "advice" not to do so, her job could well have been in jeopardy.

Appellant did not make contributions to the plan during her employment. She has, however, tendered these payments. Because of the administrative interpretation that she was not covered, no payments were ever demanded of her. In this respect the case is similar to Gerendasy v. Police and Fire Department Pension Commission, 130 N.J.L. 226, 32 A.2d 447 (1943); See also Dempsey v. Alber, 212 Iowa 1134, 236 N.W. 86 (1931). The tender was sufficient to comply with the requirement of contributions.

It is not for us to determine whether appellee would be entitled to share in social security under the Federal Government's regulations. Quite possibly she would be barred from doing so if she came under the police pension fund, the same as police officers. We cannot say that she would be in a better position than they under such circumstances.

The judgment of the trial court should be affirmed.

BERNSTEIN, Justice.

I concur in the above dissent.