cisions, it has been held that "the relation between a commission agent for the sale of goods and his principal is fiduciary." Baker v. New York Nat. Exch. Bank, 100 N. Y. 31, 2 N. E. 452, 53 Am. Rep. 150. "Property thus received is received in a fiduciary capacity, and, when the property is turned into money, that is also received in a fiduciary capacity. It does not belong to the agent, who can lawfully exercise no power or authority over it, except for the benefit of his principal, and only as authorized by him. If he uses it for his own purposes, * * * it is a conversion of that which does not belong to him." Moffatt v. Fulton, 132 N. Y. 507, 515, 30 N. E. 992; Britton v. Ferrin, 171 N. Y. 235, 242, 63 N. E. 954.

The admissions of the defendant's answer clearly place him within the purview of the foregoing decisions, and rendered him liable upon the facts as alleged by him in his answer to a judgment, under which, in default of property, his person was liable upon execution. Order affirmed, with costs.

Order affirmed, with costs.   All concur.

---

(40 Misc. Rep. 654.)

### LEECH v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Term.   March, 1903.)

1. CARRIERS—UNCLAIMED PERISHABLE PROPERTY.

Laws 1899, p. 1294, c. 582, amending section 46 of the railroad law (Laws 1890, p. 1097, c. 565), provides that unclaimed live stock and perishable freight or baggage may be sold by any railroad without notice, as soon as it can be, upon the best terms that can be obtained, etc. Ten boxes of fish packed in ice were consigned to plaintiff April 7th, reaching their destination April 8th. He failed to call for them for 54 hours, though two notices were sent him, and he had had ample opportunity to do so. Held, that defendant was warranted in selling the fish.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Edward Leech against the New York, New Haven & Hartford Railroad Company. Judgment for plaintiff. Defendant appeals. Modified.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Henry W. Taft (Hugh A. Bayne, of counsel), for appellant.
Thomas P. Hall, for respondent.

FREEDMAN, P. J.   Plaintiff brought this action to recover the value of six boxes of fish sent to him from Boston, and sold by defendant under the following circumstances:

Ten boxes of fish, packed in ice, were shipped at Boston on April 7, 1902, over defendant's road, and consigned to plaintiff in this city. The shipment reached here on the morning of April 8, 1902, and the defendant immediately notified the plaintiff of its arrival, and notified him that "it is imperatively necessary that all freight be taken away the same day of its arrival." This notice plaintiff received between 9

and 10 a. m. of April 8th.  The goods not having been removed on April 9th, and it being observed that the ice in the boxes was loose, that the fish were giving out an odor indicating that they were becoming stale, and that a slimy fluid was flowing from the boxes, the defendant sent a second notice to the plaintiff to call and get the fish. No attention was paid to this notice, and on the morning of the 10th of April, the state of the fish having been reported to the proper officer of the defendant, he, about 3:30 p. m. of that day, directed that the fish be sent to S. B. Miller & Co., fish dealers, at Fulton Market, with orders to sell the same at the best price obtainable.  One load, containing six boxes of fish, were thereupon taken by a truckman, not in the employ of the defendant, and conveyed to said Miller & Co.'s place of business.  About one hour after the six boxes had been taken, the plaintiff for the first time appeared, by a Mr. Smith, his representative, and demanded his goods.  Smith was told that the six boxes had been sent to Miller & Co. to be sold, and that the sale had not yet taken place, and he could have the six boxes by paying $3, the truckman's charge, for taking them from defendant's pier to Miller & Co.'s market.  Smith offered to pay the freight on the 10 boxes from Boston, but refused to pay the $3 cartage charges.  Thereupon Wolf, defendant's agent, telephoned to Miller & Co. to sell.  The four remaining boxes Smith took away, paying the freight thereon.  As the market for the sale of fish was over before Miller & Co. were finally ordered to sell, they held the fish until the following morning, at which time they sold them in open market for $29.65.  The cartage was $3, and cost for selling $3.71, and the freight charges on the six boxes $9, making the total charges $15.71, leaving the net proceeds $13.94, for which the defendant acknowledges liability.  Plaintiff had a judgment for $64.50, the amount testified to by the plaintiff as the reasonable value of the six boxes sued for.

Appellant claims that the sale so made by its direction was justifiable, for the reason that, having an interest in the property sold by virtue of a lien as carrier, and that if the freight had perished its lien would have become valueless, therefore, under the circumstances, it was warranted in protecting itself from loss.  It also claims it is protected by statute.  Chapter 582, p. 1294, Laws 1899, amending section 46 of the railroad law (Laws 1890, p. 1097, c. 565), provides as follows:

"Unclaimed live stock and perishable freight or baggage may be sold by any such railroad or other transportation company without notice, as soon as it can be, upon the best terms that can be obtained.  All moneys arising from the sale of such unclaimed live stock, perishable freight or baggage, after deducting therefrom all charges and expenses for transportation, storage, keeping, commissions for selling the property, and any amount previously paid for its loss or non-delivery, shall be deposited by the corporation making such sale with a report thereof, and proof that the property was live stock or perishable freight, with the comptroller for the benefit of the general fund of the state, and shall be held by him in trust for reclamation by the person or persons entitled to receive the same."

Without discussing the first point raised by the appellant, it is sufficient to say that we think that the defendant has fully complied with the provisions of the foregoing act.  At the time it removed the six

boxes of fish it had been in possession of the railroad for four days; viz., April 7th, the day they were shipped, to April 10th, inclusive, and 54 hours of this time was after their arrival at their destination, and before defendant took any action regarding their disposal. The plaintiff had been notified of their arrival, and had ample opportunity to remove the fish, but had given no indication of an intention to accept them. Under these circumstances the defendant had a right, on April 10th, to consider them as unclaimed. "Unclaimed" in the statute can mean nothing but "unclaimed within a reasonable time after notice" (Hedges v. Hudson R. R. Co., 49 N. Y. 223), and what is a reasonable time must be determined by the circumstances attending each case. Plaintiff's counsel conceded on the trial that never before had more than two days elapsed between the arrival and delivery of fish. The defendant, in estimating what was a reasonable time, had a right to consider the fact that the goods were perishable. That fish placed in boxes, packed in ice, and shipped long distances in railroad cars are perishable freight is a fact of such common knowledge as to need no judicial utterance for its establishment. In the case at bar the evidence of the perishable nature of the consignment, on April 9th and 10th, was unmistakable. The time that had elapsed since shipment, the absence of ice, the odor emanating from the boxes, the leaking of the slimy fluid, all gave strong indications of decay, and was notice to the defendant that prompt action was necessary, and justified it in taking the course it followed. The plaintiff knew that a sale of the six boxes had been directed, and knew where the goods were to be sold. He could have protected himself from a loss of but $3 cartage and the expenses of sale by attending such sale and purchasing the property, and at the same time have preserved his legal rights.

The defendant was bound to sell "upon the best terms that can be obtained." It sent the fish to the principal market of the city, to a large and well-known dealer, instructed him to sell at the best price he could, and they were sold in open market at the highest price possible. This was a compliance with the terms of the act. The material facts in the case being undisputed, the questions arising are those of law only. The judgment must be modified by reducing the amount of the recovery in the court below to the sum of $13.94 and costs, and, as modified, affirmed, without costs to either party on this appeal.

Judgment modified by reducing amount of recovery in court below to $13.94 and costs, and, as modified, affirmed, without costs. All concur.