(85 App. Div. 501.)

## ROSENSTOCK v. DESSAR et al.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. **CERTIFICATE OF DEPOSIT—PAYMENT—EVIDENCE—SUFFICIENCY.**
    In an action on certificate of deposit brought by the payee's executor 26 years after its date, evidence examined, and *held* that the question whether the certificate had been paid was for the jury.

2. **SAME—PRESUMPTIONS.**
    Presumption of payment in all cases when the statute of limitations has not run is one of fact, and not of law.

3. **SAME—DEFENSE OF PAYMENT.**
    Under all conditions payment is an affirmative defense, which must be pleaded and proved.

4. **NEW TRIAL—DISCRETION OF COURT—DISMISSAL OF SUIT.**
    Where in an action the jury, under the evidence, would have been authorized to find for either party, the court could, in its discretion, set aside the verdict rendered for plaintiff, but could not dismiss the action on the merits.

Appeal from Special Term, New York County.

Action by Edgar H. Rosenstock, as ancillary executor of Levi Jacobs, deceased, against Adolph Dessar and others, surviving partners, and Joseph Stern, as executor of David Stern, deceased. From a judgment setting aside a verdict and dismissing the complaint (67 N. Y. Supp. 657), plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edgar J. Lauer, for appellant.
Charles E. Rushmore, for respondents.

HATCH, J. This is an action brought to recover upon a certificate of deposit given by the firm of Dessar, Stern & Co. The certificate reads: "New York, Nov. 24, 1874. Received from Mr. Levi Jacobs fifteen hundred dollars—on deposit at 7 per cent. [Signed] Dessar, Stern & Co." This firm was engaged in the mercantile business in the city of New York. Jacobs was a small dealer and peddler, who resided in New York at that time, but who subsequently removed to Barton, Vt., and from there to North Stratford, N. H., where he died on the 23d day of April, 1892. It is undisputed that the deposit was made with Dessar, Stern & Co., and that they owed Jacobs at one time this sum of money. After Jacob's death, the certificate was found among his papers. He left a last will and testament which was probated in New Hampshire, and ancillary letters were subsequently issued to the plaintiff in this state. The answer averred payment and set up the statute of limitations. At the close of the evidence the court submitted a single question to the jury, viz., had the debt been paid? The jury returned by special verdict a negative answer to the question; consequently, if no legal objection stood in the way, the plaintiff became entitled to a verdict thereon for the amount of the deposit, with interest. The court reserved the question of awarding judgment upon the verdict, and upon motion for

¶ 3. See Payment, vol. 39, Cent. Dig. § 143½.

a new trial set the same aside, and ordered judgment dismissing the complaint upon the ground that the burden of establishing that the certificate of deposit had not been paid, owing to the lapse of time (26 years) since its delivery, rested upon the plaintiff; that the lapse of time created a presumption of payment, and that the plaintiff had failed to bear such burden. Although other questions were raised, this was the only one considered by the court. The plaintiff gave evidence by the deposition of one Ezekiel, a former bookkeeper of the defendant company, now residing at Birmingham, Ala., that he was in the employ of Dessar, Stern & Co. from May, 1875, until they went out of business in 1882. He testified that the deposit was entered in the books of the firm in a special account, and was carried therein independent of the merchandise account, which Jacobs had with such firm; frequent settlements were made of this merchandise account, but that no settlement was made of the special deposit; that witness carried it into each balance sheet issued, which was exhibited by him whenever made to the firm; that the deposit account so remained undisturbed without any addition to or subtraction from during the time he was there from 1875, when the books came under his observation, until 1882, when the firm failed. During that time there was nothing, either in the cash account or in the merchandise account, or from any other source, which showed that the deposit had been paid. Confessedly, the money was not paid after the failure of this firm. Sarah I. Jacobs testified that the money which constituted the deposit was a wedding gift from her mother to Jacobs prior to the marriage; that it was drawn from the Dry Dock Savings Bank in April, 1874, and that Mrs. Engel, the mother of witness, withdrew it at that time. This fact was admitted by the defendant. Jacobs told his wife that the money was on deposit, drawing good interest. He made this remark occasionally while they lived in Vermont and in New Hampshire. On the occasion of the failure of Dessar, Stern & Co., Jacobs appeared to be distressed about it. For the last four or five years of Jacobs' life his wife had knowledge of his business affairs, and kept his books in his store, and she testified that no money was paid during that period, or at any time, to her knowledge. The first time that she knew of the certificate of deposit was about May, 1892, when she collected the property and papers of her husband for the purpose of appraisal, when it was found in his pocketbook. Alfred E. Jacobs, a son, testified to the finding of the certificate about a month after his father's death. He worked in his father's store five or six years before his death, had access to his books, assisted in selling goods, knew something of his business, but never knew anything about any payments on the certificate of deposit. This was substantially the testimony upon the part of the plaintiff. Upon the part of the defendant, David Dessar, one of the members of the firm of Dessar, Stern & Co., testified that in 1874 his firm dealt with Jacobs, and that Jacobs, in November, 1874, deposited with the firm $1,500, and the firm gave a certificate of deposit to him, and that the signature to the one produced was that of the witness; that Jacobs dealt with the firm before 1874 and afterwards; that he was worth about $8,000, and witness was familiar

with his account; that the firm failed in 1884; that the sheriff then took possession of the goods and books; that the books had never been returned, and he did not know where they were. He states that on the books the account was closed in 1881, and that it was paid at that time. He further stated that there was no separate deposit account in the books, but that the merchandise and the deposit was kept in one account. He also testified that Ezekiel was not on good terms with the firm when he left their employ. It further appears that after 1881, and after the failure of the firm, notices were sent out to all the creditors by the members of the firm, including' among the creditors two brothers of Jacobs, and that Jacobs did not appear to be a creditor upon the books, and was given no notice. Simon H. Stern testified that he was counsel for the firm of Dessar, Stern & Co. and their successors, and that he was familiar with all their affairs; that Mr. Dessar was his brother-in-law; that after the failure he made an examination of their affairs in 1884, and upon such examination he was not able to find that Jacobs was a creditor of that firm, or of any member thereof. The defendant Jacob Stern, executor of David Stern, deceased, a member of the firm, testified that he qualified as executor of his father's will, advertised for claims, and that none were ever presented; that he received from his father's estate about $45,000. This estate has never been settled by a formal discharge of the executor, although otherwise the executor was ready upon an accounting to be discharged. The court submitted the case to the jury in manner more favorable to the defendants than they were entitled, and the jury found in plaintiff's favor.

Two facts are undisputed in this record. The first is that the deposit was made, and the certificate of deposit given by the firm. The second that there was no direct evidence of payment, except that given by David Dessar, who signed the certificate of deposit, and who testified that it was paid in 1881. It is noticeable from his testimony that he does not say how it was paid, whether in cash or merchandise, or why, at the time of payment, he did not take up the certificate of deposit, although he knew it was outstanding. In that connection he testified that he gave notes of the firm in business transactions, and when they were paid he was always careful to see that they were returned. There is not a syllable in his proof to show how the payment was made, or when, except that it was in 1881, and no excuse is given why the certificate of deposit was not surrendered. Upon this subject he is directly contradicted by the bookkeeper in two important particulars: (1) That the account was outstanding as unpaid when the firm failed, which was in 1882, while the payment was claimed to have been made in 1881; and (2) Dessar said the deposit and merchandise accounts were kept together, while the bookkeeper testified that they were kept entirely separate; that the deposit account consisted of a single entry of $1,500, and so remained without change, and was exhibited to the firm in the balance sheets when made up as an outstanding indebtedness. The strength of plaintiff's case lies in the fact that the certificate of deposit was outstanding, remained in Jacobs' possession, and was not taken up when it was claimed to have been paid;

and in the further fact that the testimony of the bookkeeper tends to show that it was still outstanding, and was represented as unpaid on the books of the firm, down to the time of the failure, and no entry was made therein showing that it had been paid, although the claim is that it was in fact paid in 1881.

The significant feature in this connection is the testimony of Dessar that he was always careful to take up notes and obligations that were paid. The strength of the defendant's case lies in the time which has elapsed during which it does not appear that any demand of payment was made by Jacobs in his lifetime; nor is it made to appear that any interest was paid upon the demand. As, however, it is admitted that the demand existed up to 1881, the failure to show payment of interest is very much weakened. It is unusual that the plaintiff should not have demanded and received his interest during that period, and it is also unusual that no evidence of such payment was placed in the books; but both of these things existed, and the debt also. However unusual it is, it does not militate against the fact that the debt during that period had a valid existence. It is, however, a significant circumstance that at the time of the failure of the firm Jacobs made no attempt to prosecute his claim, no notice was given to him, and he said nothing to his wife about the loss of the $1,500, which would be natural; that no notices were sent to him; and that from 1884 to 1892, a period of eight years, he slept upon his claim. These are the strong features against the plaintiff's claim, but they are not conclusive, as the representative of Jacobs appears in court with the written instrument outstanding, and presents corroborative proof in its favor as an outstanding obligation against the person who testified that it was paid. Taking all of the facts into consideration, a case was made which required its submission to the jury, and upon which the finding in plaintiff's favor might have been supported. The learned judge who tried the case, now deceased, felt constrained to set aside the verdict mainly upon the ground heretofore stated. We are unable to agree in that view. It was said in Sullivan v. Fosdick, 10 Hun, 173:

"Undoubtedly, as matter of reason, there is ground for arguing that, where a contract or transaction has left it optional with a creditor at any time, by notice or other act, to make the debt due after a certain interval, it may just as well be presumed, after suitable lapse of time, that the notice has been given, and payment made, as payment alone may be presumed when debt is due without notice. But presumptions, like other limitations, do not depend upon the reasons applicable to a particular case. They depend solely upon authority either of statute or of a course of judicial decisions, and upon authority it is clear that presumption of payment arises only upon a lapse of time after the cause of action has accrued."

This is the settled doctrine, and supported by many authorities. Boughton v. Flint, 74 N. Y. 476; Newcombe v. Fox, 1 App. Div. 389, 37 N. Y. Supp. 294, affirmed 154 N. Y. 754, 49 N. E. 1101. Presumption of payment only begins to arise when some statute of limitations begins to run. Bean v. Tonnele, 94 N. Y. 381, 46 Am. Rep. 153; Matter of Neilley, 95 N. Y. 382. Presumption of payment in all cases where the statute of limitations has not run is one of fact, and not of law. Zebley v. Trust Co., 139 N. Y. 461, 34 N. E. 1067. Under all

conditions payment is an affirmative defense, and must be pleaded and proved. Newcombe v. Fox, supra. While, undoubtedly, under the circumstances of the present case, the jury would have been authorized to have found as a fact that the claim had been paid, it is equally true that they could find, as they did, that it had not been paid. Upon the facts and circumstances as presented in this case, we think the questions involved therein are for the jury, and that the court was not authorized to say as matter of law that payment was established, based upon presumptions of any character or of proof. It is evident, however, that the learned court below exercised its discretionary power quite as much upon the facts, in granting the motion for the new trial, as it did in asserting any hard and fast rule of law applicable thereto, and we think a case was presented where the court was authorized, in its discretion, to set aside the verdict, and we are not disposed, in view of the facts and circumstances of this case, to interfere with the discretion which has been exercised. The court, however, was wrong in directing a judgment dismissing the complaint upon the merits, and for this error the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.