[Civil No. 3472. Filed January 28, 1935.]

[40 Pac. (2d) 746.]

STATE OF ARIZONA, Appellant, v. GAMBLING EQUIPMENT, Appellee.

Mr. Renz L. Jennings, County Attorney, Mr. A. David Latham, Deputy County Attorney, and Mr. Arthur T. La Prade, Attorney General of the State of Arizona, for Appellant.

Mr. Herman Lewkowitz and Mr. J. B. Zaversack, for Appellee.

ROSS, J.—On June 7, 1933, one John Grayson was arrested by the sheriff of Maricopa county upon a warrant issued out of the superior court of said county charging him with carrying on, keeping or maintaining a gambling house at No. 28 South Central Avenue, Phoenix, known as the Avalon Club. At the time of the execution of the warrant of arrest the said sheriff, under a search warrant issued out of the same court, searched said club for gambling equipment and therein found the following articles: A crap table, a roulette wheel, a roulette table, four card tables, numerous chips, three decks of cards, and one set of dice. Later, on June 24th, Grayson pleaded

guilty to an information charging him with such offense and was fined.

Thereafter the county attorney of Maricopa county, Renz L. Jennings, filed a complaint in said superior court entitled, *The State of Arizona* v. *Gambling Equipment,* in which he detailed the above facts and some others immaterial to be stated, and prayed that the court issue an order to Grayson to show cause why said gambling equipment should not be destroyed by the sheriff. Grayson appeared and answered, and in his answer denied that said property was used by him for gambling purposes, or that it was only suitable for that purpose, and asked that it be returned to him. The court, after considering the case, denied both prayers—the county attorney's prayer on the ground that there is no statutory law in Arizona authorizing the civil authorities to destroy gambling devices, and Grayson's prayer on the ground that the courts will not help one recover property whose only use can be to violate a criminal law of the state.

The county attorney has appealed from the court's judgment and assigns as error the court's refusal to order the property destroyed.

■■ This proceeding is not authorized by any statute of the state, nor can we find any precedent for it at the common law. It seeks to have gambling implements destroyed under judicial process after notice and hearing to the owner. That it is within the police power of the state to prohibit gambling and to destroy devices and implements used for that purpose is well settled. In the exercise of the power the state may authorize its executive officers summarily to destroy such apparatus, or it may require or provide for a judicial investigation and a court order for such destruction. Both means have been adopted and received court approval. 27 C. J. 1044, § 258; 12 R. C. L. 733, § 34; 20 R. C. L. 487, § 100; 24

R. C. L. 724, § 29.; *State ex rel. Daniel* v. *Kizer,* 164 S. C. 383, 162 S. E. 444, 81 A. L. R. 722, and note at page 730, where are collated the cases sustaining state laws authorizing the destruction of gambling devices. It is said by the annotator in the above note (81 A. L. R. 730):

" . . . Statutes have been passed in practically all the states and in England, which prohibit, with greater or less degree of particularity, the carrying on of such games, and punish the offender with fine or imprisonment, or both. Great diversity exists in the details of the various state statutes regulating the offense, giving rise to no little conflict of judicial opinion, which is necessarily irreconcilable. Therefore, before a decision of one state is used as an authority in another, a comparison of the respective statutes of such states should be made. 12 R. C. L., p. 708, § 3. The constitutionality of statutes providing for the destruction of gambling apparatus and devices has, however, with one exception, been uniformly upheld."

■■ We have found no case, and we think we have examined most of them, that has, without enabling legislation, sustained or approved of the destruction of gambling devices by executive officers or otherwise. All the cases upholding such power do so upon an express legislative grant of authority. In Arizona the legislation goes no further than to impose a fine or imprisonment, or both, on persons violating the gambling laws of the state. Sections 4671–4676, Rev. Code 1928. It gives to neither the executive officers of the state nor the judiciary the power or right to destroy equipment used for gambling purposes. Police regulations properly emanate from the legislature (*Bacon* v. *Walker,* 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499), and, until that body sees fit to adopt as one of the means to suppress the evil of gambling the destruction of devices used for that purpose, the other departments are helpless.

They must act within the law as they find it and not as it might or should be.

■■ The property was taken by the sheriff from Grayson under a search warrant. Considering its character and use and the circumstances, it could not have been taken from Grayson for any purpose than evidence of possession "with the intent to use it as the means of committing a public offense." Subdivision 3, § 5281, Rev. Code 1928. After Grayson pleaded guilty to maintaining or keeping a gambling house, or, in other words, when the property was no longer needed as evidence, what disposition should be made of it? Property taken under a search warrant is *in custodia legis*. Often, and we think it is generally the practice, where property has come into a court or magistrate's possession in aid of a criminal prosecution, it is restored to its rightful owner when no longer needed if there is no dispute as to its ownership. 24 R. C. L. 723, § 28. But if the property is outlawed property, in the sense that it can be used only in the way prohibited by law, as in a game of chance made a public offense, what should the court do with it? If the gambling devices are restored to Grayson, the court's order will furnish him the implements with which his business of gambling may be carried on, and not to restore these implements is to deprive the owner of their use, the practical equivalent of destroying them, which we have said cannot be done. Shall the court impound such devices when the only purpose to which they may be devoted is one in violation of law, so as to protect the public? Such was the result of the trial court's order or judgment. It is the rule of the courts that they will not lend their powers or processes to persons who get themselves or their property in such a pickle through trying to outwit, override, or frustrate the law.

In *Dorrell* v. *Clark*, 90 Mont. 585, 4 Pac. (2d) 712, 714, 79 A. L. R. 1000, under a statute authorizing the seizure and destruction of every machine used to violate the anti-gambling law, the sheriff seized two slot machines. The machines were ordered destroyed but the money found in them was ordered turned over to the clerk of the court. The possessor and operator of the machines brought an action to recover the money, and the court, after ruling against him, made this statement:

"We are not concerned with the ultimate disposition of the money; we agree that it was not deposited with the clerk of the court as a 'fine or forfeiture' to go to the school fund; as it constitutes a retrieved portion of a destroyed machine, can it be considered 'treasure trove'? *Ferguson* v. *Ray,* 44 Or. 557, 77 Pac. 600, 102 Am. St. Rep. 648, 1 Ann. Cas. 1, 1 L. R. A (N. S.) 477; *Vickery* v. *Hardin,* 77 Ind. App. 558, 133 N. E. 922. However, whatever may or may not be done with the money in the custody of the court, the power of our courts, either at law or in equity, cannot be invoked in aid of one showing a violation of the law, to complete the legal transaction and secure to the violator the fruits of his outlawry.

"The judgment is in conformity with the public policy of the state and of good morals."

When the gambler is refused the return of the coin of the realm because it was obtained through a violation of the law, it would seem he should be denied the return of the tools or implements employed to garner such money, since they are useful for no other purpose than an illegal one. 27 C. J. 1045, § 259.

We approve of the court's refusal to direct the return to Grayson of those of his gambling devices that can be devoted to no other purpose than gambling. We think that, so far as the card and crap tables and the chairs are concerned, they are useful articles, and that because they happened to be in the place where gambling was carried on they did

not lose their status as useful property, and such articles should be returned to Grayson.

With this modification, the judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.