72 Ariz. 408 (1951)
236 P.2d 733
In re TWENTY-ONE SLOT MACHINES, etc.
TUCSON PRESS CLUB et al.
v.
EYMAN.
No. 5314.
Supreme Court of Arizona.
October 15, 1951.
*410 E.T. Cusick and Richard H. Chambers, Tucson, for appellants.
Fred O. Wilson, Atty. Gen., Maurice Barth, Asst. Atty. Gen., and Robert Morrison, County Atty. of Pima County, Tucson, for appellee.
David H. Palmer, Jr., County Atty. of Yavapai County, Prescott, amicus curiae.
GIBBONS, Superior Court Judge.
This is an appeal from judgments and orders of the superior court of Pima County decreeing certain slot machines property illegal per se, directing the destruction thereof, and denying owners' motion to return money contained therein at the time of seizure.
Since the docketing of this appeal, by stipulation of counsel there has been an order substituting (a) Frank A. Eyman, present sheriff of Pima County, Arizona, as appellee for and in stead of Jerome P. Martin, former sheriff, and (b) Robert Morrison, county attorney of Pima County in lieu of Bryce H. Wilson, former county attorney. It was the former officers who initiated the proceedings here under review.
The stipulated and established facts necessary to a determination of this case are that Jerome P. Martin, as sheriff of Pima County, seized, without a search warrant or other legal process, certain slot machines and money contents located on and within the property of the Tucson Press Club, the El Rio Golf and Country Club, and the *411 Old Pueblo Club, respondents, appellants, whose premises are open only to members and invited guests, and not to the public. Criminal complaints were filed in the justice court charging each manager with the crime of permitting the operation of slot machines on the premises of his respective club. Defendants moved for a suppression of the evidence (consisting of the said machines and money contents) and for a return thereof, which motion was granted and petitioner directed to replace all property seized to the locations and in the same condition as when removed from said premises. The sheriff appealed from this order and the superior court of Pima County, on August 15, 1949, dismissed said appeal and remanded the case to the justice court for further proceedings. Thereupon the sheriff was again ordered to return the property taken.
On September 13, 1949, the club managers were tried on the criminal charges pending and each severally acquitted. On August 16, 1949, petitioner initiated proceedings in the superior court for the destruction of the slot machines under section 7, chapter 110, Session Laws of 1947, section 12-423, A.C.A. 1939, Cumulative Pocket Supplement. The respondents answered the petition, admitted and claimed ownership of the slot machines, but alleged the seizure was unlawful and void and that petitioner did not have legal custody thereof. Respondents contend that all matters involved herein were adjudicated in the justice court, that the trial court herein had no jurisdiction to hear this matter, that the property was not in custodia legis and the proceeding was and is "extra judicium". Motions for summary judgment and for the return of the money were also filed at the time of the answer. One of the grounds alleged in the motion for summary judgment was that section 7, chapter 110, supra, is unconstitutional under article 4, part 2, section 13, of the constitution of Arizona, in that the subject matter contained in section 7 is not within the scope of the title of the Act. These motions were denied, the slot machines were adjudged illegal per se and ordered destroyed.
From the foregoing facts we concur in the conclusion expressed by the trial court that these proceedings are separate and distinct and are in nowise controlled by the action taken in the justice court.
Respondents have made nine assignments of error, supported by appropriate conclusions of law, all of which need not be considered to effectually determine this appeal. The first contention is that the court erred in ordering the slot machines of respondents destroyed, for the reason that section 7, chapter 110, supra, is unconstitutional, in that the subject matter is not expressed directly or by implication in the title of the Act as required by the constitution of Arizona, which provides: "Every act shall embrace but one subject and matters properly connected therewith, *412 which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."
In re Lewkowitz, 69 Ariz. 347, 213 P.2d 690, as modified by the later opinion in the same case, 70 Ariz. 325, 220 P.2d 229, we enumerated and reaffirmed the well-established rules of statutory construction that are controlling in determining the legal sufficiency of the title to a legislative Act. We deem it unnecessary to again restate these governing principles
In determining the extent and operation of the Act in question we have to consider not only the law itself, but its title. Valley Nat. Bank of Phoenix v. Glover, 62 Ariz. 538, 159 P.2d 292.
The title reads as follows: "Relating to Unclaimed Money or Property in the Hands of Public Officials; Providing for the Disposal Thereof; Repealing Sections 12-415, 12-416 and 12-417, Arizona Code Annotated, 1939, and Declaring an Emergency."
Section 7 of the Act provides: "Sec. 7. Property Unlawful Per Se. Where property has been seized which, in the opinion of the officers having custody thereof, is so constructed that it is incapable of being lawfully used, the person having custody thereof shall petition the court for an order directing the destruction of such property. The petition and notice shall be in the form required for unclaimed property hereinbefore provided. If upon default or hearing the court shall adjudge the property illegal per se, the court shall order the property be destroyed by the petitioner."
Query: Does the title of the Act embrace the subject (and matters properly connected therewith) of section 7, when interpreted in the light of and in conformity with the rules of statutory construction heretofore approved by this court? The title begins with the words: "Relating to unclaimed money or property". Is all money or property in the hands of public officials the subject of the Act, or is the legislation to follow restricted to such property as is unclaimed? "`Unclaimed' in the statute can mean nothing but `unclaimed within a reasonable time after notice' (Hedges v. Hudson R.R. Co., 49 N.Y. 223), and what is a reasonable time must be determined by the circumstances attending each case." Leech v. New York, N.H. & H.R. Co., 40 Misc. 654, 83 N.Y.S. 166, 168.
Construing article 11, section 8, of the constitution of Arizona, in the case of In re Hull Copper Co., 46 Ariz. 270, at page 279, 50 P.2d 560, at page 563, 101 A.L.R. 664, relative to "unclaimed shares and dividends" we said: "This provision is substantially an escheat to the state, * *. It is sufficient to show that the shares and dividends have been unclaimed for such a time as would indicate that they probably will not be claimed."
*413 Chapter 110, Session Laws of 1947, is substantially an escheat to the state, but is not covered by the principles or limited by the conditions of Ch. 27, A.C.A. 1939, Secs. 27-1101 et seq., relating to Escheats.
"Escheat originally means an interruption or obstruction of the ordinary course or descent of real property, in which case the property results back by a kind of reversion to the original grantor, but it has now come to signify the passing of a decedent's estate into the general property of the state on his death intestate and without lawful heirs, and is applied indifferently to all rights of property. It is based on the theory that when the owner of property dies leaving no one authorized to take it either by will or descent, the state is the universal heir.
"It will be seen that the law of escheat only comes into play when the owner of property has died intestate and without heirs, and all valid escheat proceedings must necessarily establish (a) the fact of death, and (b) that there is no one qualified after such death to take the property. It frequently happens, however, that property is left apparently ownerless, with nothing to show that the owner has died, or, even though he has died, that he leaves no heirs. It is, therefore, universally held that there must be some judicial determination both of death and lack of heirs before the escheat can take place. This is recognized by our general statute of escheats, which sets up a complete method of securing such judicial determination by a proceeding in court, with proper service on all the interested parties. Art. 11, chap. 27, A.C. 1939. The principles of procedure set forth in this article are, in substance, those adopted by all states which have general escheat statutes. Many states, in addition to their general statutes, have adopted special statutes providing for the escheat of bank deposits which have been inactive for a certain length of time. But all of these special statutes, no matter what time of inactivity they provide, are necessarily based upon the same fundamental principle that the owner of the deposit has died intestate and leaving no heirs. The particular time set forth in the different statutes during which the deposit must have remained inactive is fundamentally a rule of evidence raising a presumption of death, and not a substantive law affecting the title to property. Were it otherwise, any law which arbitrarily deprived the owner of his property on account alone of the lapse of a certain period of time in which he had failed to assert his ownership, would unquestionably violate the state and federal constitutions as depriving him of his property without due process of law." State of Arizona v. Phoenix Savings Bank & Trust Co., 60 Ariz. 138, 132 P.2d 637, 638.
"Escheat proceedings, * * * are similar to the statutory proceedings to establish heirship in probate, and have no effect upon the title itself, but merely *414 establishes judicially in whom it is. * * *" Arizona Land & Stock Co. v. Markus, 37 Ariz. 530, 296 P. 251, 254.
The vital issue in escheat is the death of the owner of the property and that he left no heirs. The particular time set forth in the statute in which the property must have remained unclaimed is fundamentally a rule of evidence raising a presumption of death and not a substantive law affecting the title to property. State of Arizona v. Phoenix Savings Bank & Trust Co., supra; Arizona Land & Stock Co. v. Markus, supra. Therefore, the word "unclaimed" as used in the title to and in the Act, chapter 110, supra, for the period therein set forth is the basis upon which the proceedings may be commenced, the death of the owner and that he has no heirs established and that the title of the property pass to the state as the universal heir.
On the other hand, section 7 of the Act is substantially a condemnation statute and the vital issue is whether the property is so constructed that it is incapable of being lawfully used. If so constructed it is adjudged unlawful per se and ordered destroyed. To remain unclaimed is not an essential element of this proceeding. It is significant in the instant case, that at all times material hereto, the slot machines and money contents have been and now are claimed by the respondents
The title in question relates to the method of establishing that the state may become owner of certain property through escheat, clearly referring to and contemplating property that may be owned and/or lawfully possessed. While section 7 of the Act relates to the protection of public morals through condemnation and destruction of property incapable of lawful use and subject to being adjudged illegal per se. The answer is readily apparent. The content of section 7 is not embraced within or properly connected with the subject expressed in the title. This title, neither directly nor by implication, suggests that there will be incorporated in the Act provisions outlawing property that theretofore had been the subject of legal ownership. This innocuous title, "Relating to Unclaimed Money or Property in the Hands of Public Officials" and providing for its disposition, does not remotely suggest or intimate that certain property is being labeled contraband and subject to destruction.
We therefore conclude and expressly hold that section 7 of chapter 110, Session Laws 1947, is unconstitutional and void for the reason that the subject matter of the section is not expressed in the title of the legislative Act as required by the constitutional mandate.
That gambling is a social evil that eats at the very heart of public welfare and destroys moral and financial stability, *415 does not authorize executive officers nor the judiciary to order the destruction of devices used for this purpose unless authorized by legislative Act. We are bound by law as it is and not by what it should be. Our neighboring state has met this troublesome problem with a law that is recognized as a model statute. See California Penal Code, sec. 335a; and chapters 17 and 18 of the 1st Ex.Sess. 1950, Pen.Code, §§ 330b, 330.1 et seq., as found in the 1951 Pocket Supplement, supra.
The next objection for consideration is assignment of error number seven that the trial court erred in denying respondents' motion to return the money in the slot machines at the time of seizure.
On January 28, 1935, in State of Arizona v. Fifteen Slot Machines, 45 Ariz. 118, 40 P.2d 748, 749, the late Justice Ross speaking for this court, said:
"The trial court disposed of this case as it did case No. 3472, State of Arizona v. Gambling Equipment, [45 Ariz. 112], 40 P.2d 746. The proceedings in the two cases are very much alike. They differ in this very material respect: (Emp. sup.) In case No. 3472 the gambling equipment was seized under a search warrant and was thereafter in custodia legis. In the present case the slot machines were seized by the sheriff and taken away from the operators or owners without any warrant or process whatever. The owners or operators were not arrested or charged with any offense. These slot machines were never in custodia legis, as was the gambling equipment in case No. 3472.
"The statutes authorize a peace officer to arrest a person who is committing a crime in his presence * * *, but we know of no law that authorizes such officer to seize the means with which the crime was committed, except as evidence against the criminal. The law does not provide for the seizure of gambling devices nor for their forfeiture or destruction. * * (Emp. sup.)
"The whole proceeding was extra judicium. We have no law authorizing the sheriff to take possession of or seize gambling implements simply because they are such. He may arrest the one violating the gambling law upon a warrant, or without a warrant if the offense is committed in his presence, but he cannot go out into his bailiwick and pick up gambling devices or other instruments or implements of crime and report them to the * * * superior court and thus confer jurisdiction on the court to order their destruction."
This money, either separately or in connection with said slot machines, has never been introduced in evidence, or is not now being held as evidence against a defendant, or defendants, in any criminal proceeding. As far as this case is concerned, it was seized without search warrant, or legal process, and reported to the superior court with said machines for disposition under the provisions of said section 7, supra, herein found to be unconstitutional. *416 The existing law relative to possession, seizure and disposition of gambling devices as such is the same today as it was when the opinion in the case of State of Arizona v. Fifteen Slot Machines, supra, was written. It follows that the money was never in custodia legis and that the proceeding was extra judicium.
In view of the foregoing it is not necessary to consider the other assignments of error and propositions of law.
The judgments and orders of the court appealed from are reversed and remanded with instructions that the trial court grant respondents' motion for summary judgment and their motion for return of the money.
UDALL, C.J., and STANFORD, PHELPS and LA PRADE, JJ., concur.
DE CONCINI, J., having announced his disqualification, the Honorable J. SMITH GIBBONS, Judge of the Superior Court of Apache County, was called to sit in his stead.