OPINION OF THE COURT
Philip S. Straniere, J.
“I believe . . . that banking establishments are more dangerous than standing armies.”[1]
“A power has risen up in the government greater than the people themselves, consisting of many and various and powerful interests, combined into one mass, and held together by the cohesive power of the vast surplus in the banks.”[2]
“Finance is the art of passing money from hand to hand until it finally disappears.”[3]
Claimant, D & I Fashions Inc., commenced this small claims action against the defendant, JP Morgan Chase Bank, alleging that the defendant had failed to return monies claimant received as a security deposit and placed in a savings account with defendant’s predecessor in interest. A trial was held on November 25, 2008. Claimant appeared without an attorney. Defendant was represented by counsel.
Claimant, by its principal, testified that on July 1, 1996 it received $2,200 from its tenant, Entertainment Technologies Pegasus Productions, as a security deposit in regard to a commercial lease of the premises, 8140 New Utrecht Avenue, Brooklyn, New York, which is owned by the claimant. On July 5, 1996, claimant deposited the $2,200 in a savings account at Chemical Bank opened at defendant’s branch at 8523 20th Avenue, Brooklyn, New York. On August 4, 1996, the tenant delivered to claimant a second check in the amount of $2,200 as an additional security deposit. Claimant deposited the second check in the same account at Chemical Bank on August 12, 1996. It is conceded that the current named defendant is the *696 successor to Chemical Bank after several mergers and acquisitions. Although Chemical Bank acquired Chase Bank in July-1996, the month this account was opened, it elected to do business under the name Chase. In 2008 the tenant, who has remained a tenant the entire time, inquired as to the status of the account. Claimant went to the defendant’s branch at 8523 20th Avenue, Brooklyn, New York to close the account only to learn that the defendant no longer had any record of such an account.
Counsel for the defendant suggested that because the bank no longer had any record of the account, and since claimant insisted that it never closed the account, that perhaps the monies had been turned over to New York State as “abandoned property” as required by the Abandoned Property Law. Defendant asserted that because there was no activity on the account for several years, such as further deposits or withdrawals, the account would be deemed “abandoned” after five years. Claimant asserts that it never abandoned the account nor had it ever received any notification either from the defendant or the State of New York that the account has been deemed abandoned. Claimant alleges that when it contacted the New York State Comptroller’s Office of Abandoned Property, it was informed that no such account had ever been surrendered to it. Claimant also stated that the defendant refused to cooperate and file the necessary papers with New York State to trace the account. Defendant asserts that it did not fill out the forms because its records do not show that the account was turned over to the State of New York. Defendant contends that the only logical conclusion is that the claimant must have closed the account. Either that, or the account was transferred to defendant’s branch in “Brigadoon” and it will reappear in 2096.
Claimant admitted that over the years it has no record of receiving any 1099-INT form from the defendant in regard to the interest being earned on the account. Defendant asserted that after seven years it purges all of its accounts so that it has no record of any 1099-INT being issued to the claimant. Defendant also stated that the type of savings account opened by the claimant could be closed by the claimant without presenting the savings account register simply by the use of a withdrawal slip and an independent form of identification from the claimant. Under this procedure, there would be no record of the closing of the account on the savings register maintained by the claimant unless the claimant made such a notation.
*697 Applicable Statutes
State Finance Law § 95 provides:
“Abandoned property fund.
“1. The state comptroller shall maintain a special fund to be known as the abandoned property fund. Such fund shall consist of all moneys paid to him pursuant to the provisions of the abandoned property law and all moneys which by law shall be paid into such fund.”
Abandoned Property Law § 300 provides:
“Unclaimed property held or owing by banking organizations.
“1. The following unclaimed property held or owing by banking organizations shall be deemed abandoned property:
“(a) Any amounts due on deposits . . . held or owing by a banking organization, which shall have remained unclaimed for five years by the person or persons appearing to be entitled thereto, including any interest or dividends thereon, excepting
“ (i) any such amount which has been reduced or increased, exclusive of dividend or interest payment, within five years, or
“(ii) any such amount which is represented by a passbook not in the possession of the banking organization, which has been presented for entry of dividend or interest credit within five years, or
“(iii) any such amount with respect to which the banking organization has on file written evidence received within five years that the person or persons appearing to be entitled to such amounts had knowledge thereof.”
Abandoned Property Law § 301 provides:
“Annual report of abandoned property.
“1. On or before the first day of August in each year every banking organization shall make a verified written report to the state comptroller, which shall contain a true and accurate statement, as of the thirtieth day of June next preceding of all abandoned property specified in section three hundred, held or owing by it.”
Abandoned Property Law § 1412-a provides:
“1. . . . every person, ... or corporation required *698 to file a report of abandoned property pursuant to this chapter, shall retain for a period of five years following the thirty-first day of December of the year for which the report has been filed, all books, records and documents necessary to establish the accuracy and completeness of such report.”
12 USC § 1829b (g) provides:
“Retention period. Any type of record or evidence required under this section shall be retained for such period as the Secretary may prescribe for the type in question. Any period so prescribed shall not exceed six years unless the Secretary determines, having regard for the purposes of this section, that a longer period is necessary in the case of a particular type of record or evidence.”
Time Line
Assuming that the account was not closed by the claimant, and the account was classified as “deemed abandoned,” the following time line would apparently apply in regard to defendant’s obligation to maintain records.
(1) Account opened: July 5, 1996
(2) Last deposit: August 12, 1996
(3) Earliest deemed abandoned (Abandoned Property Law § 300): August 12, 2001
(4) Report due Comptroller (Abandoned Property Law § 301): August 1, 2002
(5) Payment due Comptroller (Abandoned Property Law § 303): November 10, 2002
(6) Last date to retain records (Abandoned Property Law § 1412-a): December 31, 2007
(7) Last date to retain records of payment pursuant to federal law (12 USC § 1829b): November 10, 2008.
If the account was closed by the claimant, then the record retention obligation of the defendant would run from the date of closure. Defendant is assuming that because it has no records and that the account was not turned over to the State Comptroller, that the account was closed prior to August 12, 2001, thereby triggering even a shorter time period for record maintenance than set forth above. In any case defendant is claiming that the record retention statute shields it from liability.
*699 Discussion
A. Is this an Unclaimed Account?
Under General Obligations Law § 7-103 monies advanced as a security deposit for the rental of real property shall remain the property of the person making the deposit until repaid or applied. The person holding the monies is deemed to be holding those funds in trust and may not commingle any such deposit. The statute further provides that if the monies are deposited with a banking organization, notification must be given to the person advancing the monies of the name and address of the banking organization.
The sums deposited in July and August 1996 in the account with the defendant remained the property of the tenant even though the tenant is not named on the bank account (General Obligations Law § 7-103). Submitted by the defendant as part of its exhibits is a copy of the “savings account register” for the account in question. Although the name on the account is D & I Fashions, someone wrote on the copy presented “Pegasus Productions Security.” There is no testimony as to whether this was written by the claimant or by employees of the defendant.
The “savings account register” issued by the defendant to the claimant sets forth the following information:
“How To Maintain Your Savings Account Register:
“1. Every time you make a deposit or withdrawal at a Teller, ATM machine or Quick Deposit Box you will receive a receipt. Use this information to record your transactions in your savings account register.
“2. When you receive your account statement each month, check the transactions you recorded in your register against the information on your statement.
“3. Enter the interest earned from your statement in the “interest paid” column of your register.
“4. To reconcile your balance with your monthly statement, simply refer to the instructions on the back of your savings account statement.”
Claimant has not produced any evidence in regard to this account. The savings account register submitted as an exhibit is from the documents presented by the defendant. Claimant has no monthly or other periodic statements; claimant has no 1099 forms for yearly interest earned; claimant shows no activity in the savings account registry. The problem with making these part of claimant’s burden of proof is that the defendant is the party who would generate the monthly statements and 1099 *700 forms. The fact that none exist tends to support a conclusion that the records were lost shortly after the account was opened and Chemical Bank acquired Chase in July 1996 rather than the position asserted by the defendant that none were issued because the account was closed.
It should be noted that the savings account register does not warn the depositor that the failure to have transactions entered on the account register by going to the bank on a regular basis will result in the account being classified as “abandoned property” and turned over to the State. It seems that such a disclosure should be included on every savings account so that depositors are made aware that they should seek to have interest entered on a regular basis or take some other steps which would indicate the account is not abandoned.
Why would the person who opens a savings account necessarily add or subtract monies to the amount in the account? Especially an account given as security on a lease. Commercial leases often have terms running several decades and require the security deposit to be held the entire period of time. People often open savings accounts solely to have money available for themselves or their family at a future date and do so solely so as to earn a fixed rate of interest paid by the bank. If a person just wanted to save money, they could stuff cash in the mattress or in coffee cans or in secret drawers in a desk. (Although owing to the downturn in the current economy and the number of financially troubled banks, perhaps that would be a viable alternative.)
“[T]he depositor of funds into a bank-savings account is ordinarily entitled to believe, and does in fact expect, that the deposit is entirely safe, that the funds will be indefinitely available, and that no demand need be made and no action need be taken to protect the right to obtain those funds at any time the passbook is presented.” (Pagano v United Jersey Bank, 143 NJ 220, 231, 670 A2d 509, 514 [1996], quoting Pagano v United Jersey Bank, 276 NJ Super 489, 498, 648 A2d 269, 273-274 [1994].)
On the other hand, the defendant has no records either. The defendant argues that it would not have any such documentation because the account is so old and was dormant. Defendant relies on the above-cited statutes as its excuse for not having any records. Defendant asserts that if there was no activity on the account for a period of five years, it would have been deemed *701 abandoned and after notice to the claimant, transferred to the New York State Unclaimed Property Fund (Abandoned Property Law § 300). Assuming this is correct, the last transaction on the account would have been in August 1996. Based on the language of the statute using the word “shall” to modify the phrase “deemed abandoned property,” if there was no activity other than interest being earned, defendant was required to have marked the account as “abandoned” in August 2001 (Abandoned Property Law § 300 [1]).
There does not appear to be a definition in the statute of what is the standard to be used to determine if the property is indeed “unclaimed.” The Abandoned Property Law provides a process as to what is to be done with unclaimed property after five years, but neither it nor any case law seems to define what makes property “unclaimed” for the purposes of this statute. There was a determination as to what is meant by “unclaimed” in regard to the Railroad Law. “ ‘Unclaimed’ in the statute can mean nothing but ‘unclaimed within a reasonable time after notice’ . . . and what is a reasonable time must be determined by the circumstances attending each case” (Leech v New York, New Haven & Hartford R.R. Co., 40 Misc 654, 656 [1903]). This case logically pointed out that there must be some notice to the owner of the property or in this case to the depositor, that there is an intent to treat the property as unclaimed and ultimately abandoned. Defendant is unable to provide such notice. The burden to do so must be on the party holding the property. However, defendant alleges it has no records because the claimant must have closed the account, therefore defendant did not have to give any notice and would lack any records in that regard. Depositors such as claimant find themselves in a banking “Catch-22” that would make Joseph Heller envious.
The mere fact that there is no activity by the depositor in regard to a savings account does not lead to the conclusion that the funds in the account are “unclaimed” and should be deemed abandoned after five years. As stated above, people deposit money in savings accounts at banks so that the money will be safe and available should they need it in the future, or in this case because a statute requires such a deposit for the benefit of a tenant.
The court therefore cannot conclude that the mere passage of time rendered this account “unclaimed” and subject to be classified as “abandoned” under the statute. Common sense leads to the conclusion that savings accounts of all kinds should be *702 excluded from the definition of unclaimed and ultimately-abandoned property. To do so defeats one of the purposes for which people open such an account — to save money for a “rainy day” or some other particular purpose.
B. Does the Presumption of Payment Apply?
By claimant depositing money in a savings account with the defendant, a creditor-debtor relationship was created. Claimant became the creditor of the defendant debtor bank, which had an obligation to pay over the money in the account when demand for payment was made. There developed in the common law, a doctrine known as the “presumption of payment rule.” When a creditor sues a debtor and provides evidence that the debt exists, the burden then shifts to the debtor to prove payment. The common-law presumption of payment doctrine is an evidentiary rule which prevents the burden from being shifted to the debtor when the account remains open and unclaimed for more than 20 years. The doctrine is “founded upon the rational ground that a person naturally desires to possess and enjoy his own, that an unexplained neglect to enforce an alleged right, for a long period, casts suspicion upon the right itself’ (Bean v Tonnele, 94 NY 381, 386 [1884]). The corollary of this, is that if less than 20 years have elapsed, there is a presumption that the debt has not been paid and the burden is on the debtor to establish payment was made or in this case, that the account has been closed. The statute of limitations is not an issue because it will only begin to run from the date the claimant demands payment and the defendant bank is unable to respond. In this case, the demand for payment was not made until 2008 and the litigation was timely commenced.
A number of states have addressed the issue of whether or not the presumption applies to various types of bank accounts. The 20-year presumption has been applied to checking accounts, savings accounts and certificates of deposit. New York is one of two states which has applied the presumption to checking accounts (Boskowitz v Chase Natl. Bank of N.Y., 202 Misc 1016 [1952]) and one of three states to apply the presumption to certificates of deposit (Signor v J.P. Morgan Chase & Co., 13 Misc 3d 1229[A], 2006 NY Slip Op 52052[U] [2006]). The Signor case actually applied the presumption to a certificate of deposit sought to be claimed less than 20 years after the deposit was made because of extrinsic evidence such as proof that the account could be closed without the certificate and the fact that the plaintiff could not produce Internal Revenue Service form *703 1099 for this period. The court erred in its decision when it relied on the plaintiff not being able to produce these forms because the issuance of the 1099 is not the obligation of the depositor as stated in the case, but is an obligation of the person paying the interest, the bank. There do not appear to be any New York cases applying the presumption of payment to savings accounts.
Two states have recently refused to apply the presumption to savings accounts, New Jersey (Pagano v United Jersey Bank, 143 NJ 220, 670 A2d 509 [1996]) and Utah (Handy v U.S. Bank, N.A., 177 P3d 80 [Utah 2008]). In these cases, it was determined that the very nature of savings accounts makes the presumption of payment after 20 years inapplicable. In the case at bar, less than 20 years have passed so there is a presumption that the account is still in existence. Payment of money deposited with a bank is an affirmative defense. The burden to prove payment is on the party asserting payment, the defendant bank (Rosenstock v Dessar, 85 App Div 501 [1903]). Defendant asserts that owing to its record-keeping requirements, there is a presumption that payment has been made because it no longer has any record of the account being in existence. The court in Pagano addressed this issue and noted:
“We agree with the Supreme Court of Virginia that even if the lack of bank records is caused by adherence to established record-retention standards, the absence of records ‘does not constitute evidence of payment.’ Wool, supra, 448 S.E.2d at 615.[4]
Furthermore, no statutes, regulations or decisional law exempted UJB from retaining records to establish payment. It was a conscious economic decision made by the bank to shift its resources away from record retention. That may or may not be a sound business judgment, but it clearly is insufficient to justify the remedy UJB seeks from this Court.” (Pagano, 143 NJ at 230, 670 A2d at 514.)
This court must agree with the New Jersey and Virginia courts; there is nothing that prevents the defendant bank or any other bank from retaining records beyond the statutory minimum time periods. Each institution makes a business judgment as to how long it intends to keep records. The need to destroy such records becomes questionable when in the current *704 computer age, such information can be stored on disks which undoubtedly can retain documentation as to thousands, if not millions of accounts in minimal amounts of space. The fact that the State of New York has legislated a system to have accounts be declared “abandoned” so that the money can escheat to the State and the funds deposited in the state coffers does not relieve a bank or other such institution from keeping records beyond the statutory minimum time. The current system is in fact another method to increase the monies in the state treasury. State Finance Law § 95 (3) requires the Comptroller to pay to the state treasury for use of the general fund any monies in excess of the greater of six million dollars or enough monies to satisfy the claims against the fund in the “immediately succeeding month.” The statute goes on to provide that at the end of the fiscal year, the amount being retained in the abandoned property fund shall not exceed $750,000. The Legislature has created a system to swell the coffers of the state treasury and reduce the record-keeping expenses of banks at the expense of the public without giving sufficient notice to the public such as a disclosure on every bank account statement.
Because this case involves an account which vanished less than 20 years after it was opened, the presumption is that it was not paid by the bank. The burden of proof is on the defendant to establish payment and not on the claimant. Defendant must show some evidence to support its allegation that the account was closed by the claimant. If it was closed by some third party, then the defendant would still have liability because payment was made to an unauthorized person. As pointed out above, defendant cannot rely on those statutes which permit it to destroy its own records in order to escape liability. Defendant engages in record destruction for its own business reasons and cannot use that as a basis to defeat a claim. If that were the law there would be nothing to prevent a bank from wilfully destroying records on dormant accounts prior to five years and keeping the money.
Defendant has the burden of proving payment. Defendant has failed to meet that burden. Claimant is entitled to a judgment. Conclusion
Judgment for claimant. It has proved its prima facie case. The burden was on the defendant to prove payment. Defendant did not meet that burden.
Judgment for claimant in the amount of $4,400 with interest from April 28, 2008, the date of the letter from defendant declin *705 ing to pay on the account, costs and disbursements. The court would have awarded interest to the claimant from 1996 if there had been any testimony as to the rate payable on this or a similar account for the last 12 years. Because there was no such testimony, any award would be speculative.

. (Thomas Jefferson, in a letter to John Taylor, May 28, 1816.)

. (John C. Calhoun, Speech, May 27, 1836.)

. (Robert Sarnoff.)

4. The full cite is Wool v NationsBank of Va., N.A. (248 Va 384, 448 SE2d 613 [1994]).